### BALDWIN et al. v. McCULLOUGH.

(Court of Civil Appeals of Texas. Texarkana. Feb. 28, 1912. On Motion for Rehearing, March 21, 1912.)

1. TRESPASS TO TRY TITLE (§ 39*)—TRANSFER OF HEADRIGHT CERTIFICATE — EVIDENCE — ADMISSIBILITY.

　　A plaintiff in trespass to try title who claims title from the holder of a headright certificate may show by circumstances a conveyance of the certificate by the holder.

　　[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 54; Dec. Dig. § 39.*]

2. TRESPASS TO TRY TITLE (§ 41*)—TRANSFER OF HEADRIGHT CERTIFICATE — EVIDENCE — ADMISSIBILITY.

　　The evidentiary value of circumstances essential to authorize the presumption that a missing conveyance in a chain of title was made is derived from their tendency to show an acquiescence in the title asserted by the claimant under the conveyance; such acquiescence presupposing knowledge on the part of the alleged grantor that adverse rights are set up by such claimant, which knowledge may be inferred from circumstances such as possession, coupled with open and notorious claim of ownership.

　　[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. § 41.*]

3. TRESPASS TO TRY TITLE (§ 39*)—PRESUMPTION OF MISSING CONVEYANCE IN CHAIN OF TITLE.

　　Where, in trespass to try title to recover the east third of a survey under a headright certificate granted in 1838, plaintiff claimed title through a conveyance of the certificate by the owner prior to 1840, and the survey was not divided until 1876, at which time the sur-

vey was divided into the east third and the west two-thirds, evidence of deeds conveying portions of the west two-thirds after the partition and of possession under the deeds and payment of taxes on portions of the west two-thirds was admissible as evidence of title in plaintiff to the east third, as showing a conveyance of the headright certificate sought to be established by circumstances alone.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 54; Dec. Dig. § 39.*]

4. EVIDENCE (§ 273*) — DECLARATIONS — ADMISSIBILITY.

Where the title of plaintiff in trespass to try title depended on a conveyance of a headright certificate by the original holder thereof, and a conveyance was attempted to be proved by circumstantial evidence alone, declarations of the original certificate holder since deceased that he owned the land and that he had not sold his certificate were admissible on the issue of acquiescence as showing that he asserted a claim to the land at the time when plaintiff relied on an adverse claim.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1108–1120; Dec. Dig. § 273.*]

Willson, C. J., dissenting in part.

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Action by J. W. McCullough against J. H. Baldwin and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Jacob C. Baldwin, of Houston, S. F. Leslie, Thos. P. Steger, and McGrady & McMahon, all of Bonham, for appellants. Richard B. Semple, of Bonham, Sam D. Stinson and Neyland & Neyland, all of Greenville, for appellee.

HODGES, J. This is an action of trespass to try title brought by the appellee, J. W. McCullough, against the appellants to recover the east one-third of the J. H. Knapp survey situated in Fannin county. It is the second appeal in the same litigation, but the facts are in some respects different from what the record disclosed upon the first appeal. See White et al. v. McCullough, 56 Tex. Civ. App. 383, 120 S. W. 1093. The common source relied upon is the issuance of a headright certificate to J. H. Knapp in 1838.

After the usual form of an ordinary action of trespass to try title, the appellee pleaded his title specially in substance as follows: That the original certificate by virtue of which the land in controversy was located was acquired from the government of Texas by J. H. Knapp in 1838, who during the same year, by a verbal agreement, sold and delivered it to W. H. McCullough; that Wm. H. McCullough in 1840 verbally sold and delivered the certificate to John McCullough; that during the year 1840 Wm. H. McCullough died, leaving as his only heir his brother John McCullough; that, after acquiring the certificate, John McCullough caused it to be located on the land in controversy, and a patent to be issued to J. H. Knapp July 7, 1855. The title of the appellee is then deraigned from John McCullough by

setting out in detail the various transfers down to himself.

The appellants, defendants below, relied upon pleas of not guilty and the various statutes of limitation based upon adverse possession and improvements in good faith. Some of them also pleaded specially a title acquired through an heir of J. H. Knapp, the original owner of the certificate by virtue of which the land was located. After the institution of the suit, Sam D. Hawkins, a resident of Hunt county, intervened, alleging that his deceased wife was a daughter of J. H. Knapp, and claimed an interest in the land. The case was submitted to the jury on special issues. The issues of fact upon which Hawkins relied to support his claim were decided against him, and no complaint is here made upon his part.

With reference to the remaining issues, the jury found as follows: (1) That the Wm. Knapp under whom the appellants claimed title was not the son of J. H. Knapp; (2) that Wm. Knapp did not execute a deed conveying the property to Robert Hanna, through whom the appellants claim; (3) that J. H. Knapp never transferred the original certificate to one W. M. Cook; (4) that John McCullough, under whom the appellee claims, acquired title to the land certificate through W. H. McCullough, from J. H. Knapp, as alleged by the plaintiff in his petition; (5) that this title was acquired by a verbal transfer and prior to October 17, 1845; (6) that none of the claimants of the land in controversy had held adverse possession a sufficient length of time prior to the filing of this suit to invest them with title by limitation. Upon these findings the court entered up a judgment in favor of J. W. McCullough, the appellee, for the land. It is urged that the court erred in so doing, because of the insufficiency of the evidence.

The testimony showed that the original certificate was issued to J. H. Knapp in 1838, and was located upon the one-third of a league of land, of which the land in controversy is a part, on January 10, 1844. The survey was made October 24, 1845, and the certificate of the surveyor appended to the field notes showed that it was made for J. H. Knapp as the quantum of land to which he was entitled by virtue of the certificate. The field notes were returned and filed in the Land Office on May 23, 1853. In addition to the Land Office indorsements on the certificate, it bore the following: "McCullough Assnee. J. H. Knapp. No. 100, 1/3 League. Dr. Roberts applied for these three numbers 100, 1/3 league; 2866, 640 acres; 291, 640 acres, to be surveyed so as to join B. Flaharty's * * * on the mission * * * as may be. B Book 48, March 17, 1839." J. J. Terrell, Commissioner of the Land Office, testified that he had examined the indorsements on the back of the original certificate, and that those

above quoted appear to have been made in a different handwriting from the Land Office indorsements, and at an earlier date. There was no other evidence as to when those indorsements were made, or by whom. The records of the Land Office also showed that a patent was issued to J. H. Knapp, his heirs and assigns, July 7, 1855, and that on the 10th day of the same month this patent was delivered to one P. de Cordova, by whom the patent fee was paid. This patent was afterwards delivered by the widow of John McCullough to one of her relatives for use in a partition suit in the year 1875. W. H. McCullough, to whom it is claimed Knapp transferred the certificate, died in 1840, about two years after its issuance. He left three brothers and three sisters as his only surviving heirs, among whom was the John McCullough before mentioned. J. H. Knapp died some time in 1855 or 1856; the exact date not being fixed. John McCullough died in 1870, leaving a widow and nine children, under whom the appellee now claims.

The appellee also introduced in evidence a deed from John McCullough to W. M. Cook, in which a consideration of $3,000 paid by Cook, of the county of Calhoun, state of Texas, is recited, and in which John McCullough conveys to Cook an undivided two-thirds interest in the land located by virtue of the Knapp certificate. The deed, after describing the certificate, contains the following recital: "Which certificate was conveyed to Wm. H. McCullough, deceased, by the said J. H. Knapp." Then follows a special warranty of the title against any person claiming under either the grantor or Wm. H. McCullough. On the same day Cook made a similar deed to John McCullough, in which, for a recited consideration of $1,500, he conveyed an undivided one-third interest in the same tract of land. After referring to the certificate, his deed contains this recital: "Which certificate was located and conveyed to me by said J. H. Knapp." Appellee's evidence also showed that, after the deeds to each other executed by Cook and John McCullough, Cook conveyed the entire tract in trust to Samuel D. Roberts for the purpose of securing an indebtedness to R. H. Lane; that through some foreclosure proceedings Lane afterward obtained a fee-simple conveyance to all of the land. Lane and wife thereafter conveyed the entire survey to their two sons, R. H. and Jas. N. Lane, except a portion which, it seems, had previously been sold to another party. In 1876 a judgment was rendered in the district court of Fannin county, in which the Knapp survey was partitioned between R. H. and Jas. N. Lane and the widow and children of John McCullough. The west two-thirds was awarded to the Lanes, and the east one-third (the land involved in this suit) was awarded to the widow and children. Over the objection of the appellants, the appellee was permitted to introduce in evidence various deeds and pow-

ers of attorney relating exclusively to conveyances of portions of the west two-thirds, and the payment of taxes thereon by those claiming the same. He was also permitted to prove, over similar objections, that prior to and after the partition suit before mentioned there were actual settlements on portions of the Knapp survey not included in the part here in controversy. The only objection urged to this testimony is that it was irrelevant and immaterial, in that it did not tend to establish any transaction upon which the appellee relied to show title.

In one group of their assignments the appellants insist that the evidence was insufficient to authorize the judgment. Before passing upon the sufficiency of the evidence, it would be proper to first consider those assignments attacking the ruling of the court in admitting the testimony above referred to over the objections made.

[1] The weakness of the appellee's title consisted in the absence of any direct evidence of a conveyance by Knapp of his title to the original certificate. It was permissible for the appellee to prove that fact by circumstances. The relevancy of the facts offered in evidence depended upon whether or not they tended to show that such a transaction as that in question ever occurred. In the case of Walker v. Caradine, 78 Tex. 489, 15 S. W. 32, the court had under consideration a question similar to that here presented, in which the sufficiency of the evidence was challenged. Upon that issue, it was said: "Now presumptions of grant have usually been applied to incorporeal hereditaments. For example, when the owner of land has seen another use a way over it for 20 years, and where such use has been inconsistent with the idea that it did not have a legal origin, the presumption of a grant may become conclusive. But it is apparent that in such a case the presumption derives its main support from the acquiescence of the owner of the fee. So, also, one who has the apparent title to a tract of land, knowing another has taken adverse possession, acquiesces in such adverse enjoyment of the property for a period of 20 years, a jury would be justified in presuming a grant, in the absence of circumstances tending to a contrary conclusion. But in both of these cases it is apparent that the presumption has its foundation in the acquiescence of the holder of the apparent title. There can be no acquiescence in an adverse possession without a knowledge that it exists." Baldwin v. Goldfrank, 88 Tex. 249, 31 S. W. 1066, was a case in which the recitals in an old deed were relied on to establish the existence of a power by which a former conveyance and a necessary link in the chain of title was authorized. In discussing the probative value of circumstances authorizing the presumption of the power, the court said: "The presumption of a grant or of a power from claim of ownership upon the one side, and an acquiescence

upon the other, rests rather upon the acquiescence of the latter than upon the claim of the former. Without proof of some unequivocal acts of ownership, long-continued, and brought home to the adverse party, acquiescence in the claim cannot be established."

[2] Both of the foregoing decisions make it clear that the evidentiary value of the circumstances essential to authorize the presumption that the missing conveyance had been made is derived chiefly from their tendency to show an acquiescence in the title asserted by the adverse claimant. But acquiescence presupposes knowledge on the part of the owner that opposing rights are set up by another; for how can it be said that one acquiesces in something of which he is ignorant? But knowledge may also be inferred from circumstances, such, for instance, as possession, coupled with open and notorious claim of ownership. It has been held, however, that actual possession of another is not necessary to an inference of knowledge and acquiescence sufficient to support the presumption of a conveyance. Garner v. Lasker, 71 Tex. 431, 9 S. W. 332.

[3] The issue made by the assignments now being considered is, did the possession and the dealings with reference to the west two-thirds of the Knapp survey by John McCullough, Cook, and those who claimed under conveyances from them constitute facts that might be considered as evidence of an acquiescence on the part of those who had the right to assert a title formerly held by Knapp? It was not until 1876 that there was any division made of the survey. The deeds and transactions concerning the land prior to that time related to its entirety. Those who afterward asserted title to and occupied the west end did so under deeds depending upon the same title by which the east end was held, the title of McCullough to the original Knapp certificate. Possession and the assertion of title to the west end, when undisturbed, were as strong circumstances tending to show a conveyance of the original certificate from Knapp to McCullough as similar transactions with reference to the east end. It is true the west end of the survey is not involved in this suit, and that we are concerned only with the title to the east portion, but the grant which is sought to be established by circumstances covers the entire survey. We conclude that the testimony was admissible as against the objection that it was irrelevant and immaterial. Upon the former appeal we held that the facts as then disclosed by the record were insufficient to support a finding in favor of the appellee; but we are not prepared to so hold in the present state of the evidence. In view of the fact that the case is to be reversed upon other grounds, we forbear making any comment upon the sufficiency of the evidence. There is no merit in the contention of the appellants that the appellee should not have been permitted to recover more than one-sixth of the land. Under the facts, if appellee cannot recover all, he is not entitled to any part. His right rests, not only on the presumption of a transfer from Knapp to W. H. McCullough, but also upon one from W. H. McCullough to John McCullough. If John McCullough's title was one acquired by inheritance alone, it only amounted to a one-sixth interest, and he completely divested himself of it when he conveyed an undivided two-thirds to Cook. If Cook had no interest to convey to John McCullough, as found by the jury, then the latter acquired nothing by the deed from Cook.

[4] Appellants introduced in evidence the depositions of two witnesses, Ed Jamison and Thomas R. Ferrell, who resided in Harris county, Tex., and who testified to having known a man by the name of J. H. Knapp prior to 1855. According to the testimony of these two witnesses, Knapp lived in Harris county from about 1845 till his death in 1855 or 1856. Their evidence tended to show that he was the same Knapp who owned the original certificate by virtue of which the land in controversy was located. By the witness Jamison the appellants offered to prove the following: "I know of J. H. Knapp claiming some land in North Texas, but I don't remember in what county. J. H. Knapp claimed to own this land in North Texas a short time before his death. I know nothing about any sale of this land. I got the information about the land certificate from hearing Knapp talk about it—from hearing him claim to own some land in North Texas." By Ferrell they offered to prove the following: "J. H. Knapp told me a short time before his death that it (the land) was located there, and that he owned a one-third league in Fannin county, Tex. He was claiming this land when he died. He told me a short time prior to his death that he owned it. He claimed to own it. He also told me that he had sold his certificate which was issued to him for his services in the army, but that he had not sold his headright certificate. He claimed to own this headright certificate at the time of his death." This testimony was excluded on the objection that it was hearsay and self-serving. We do not so regard it in view of the issues presented in this case. It is admitted that one J. H. Knapp was the owner of the original certificate by virtue of which the land was located. The identity of this J. H. Knapp was not shown to be different from the man to whom these witnesses referred. Their testimony was therefore admissible as tending to identify the J. H. Knapp whom they knew with the owner of the original Knapp certificate. Appellee's connection with Knapp's title depended upon a transfer from Knapp to W. H. McCullough prior to the death of the latter in 1840. There being no direct evidence of

such a transfer, appellee has been compelled to resort to circumstances to prove that essential transaction. Inasmuch as the acquiescence of Knapp and those who succeeded to his right in the adverse claim asserted by the McCulloughs is the principal circumstance from which a conveyance will be inferred, it follows that testimony tending either to establish or to negative such acquiescence on the part of Knapp at a time when the McCulloughs must have claimed to own this certificate, if there was ever any transfer, would be material upon that issue. While the statements and declarations attributed to Knapp were not admissible for the purpose of proving that he had acquired title to the land they were admissible as bearing upon the fact of his acquiescence, and as tending to show that he was still asserting a claim to the land at a time when the appellee contends he must have yielded to the adverse claim of another. If this J. H. Knapp was ever the owner of the original certificate, the statements attributed to him by these witnesses were inconsistent with any transfer having previously been made divesting himself of the title. Such testimony was admissible for the purpose of rebutting the inference of acquiescence, and should have been permitted to go to the jury. It is difficult to understand how the jury could have found a transfer of that certificate from Knapp to W. H. McCullough if they credited this testimony.

We think the court erred in excluding it, and because of that error the judgment will be reversed and the cause remanded for a new trial.

WILLSON, C. J. I do not agree that the deeds conveying portions of the west two-thirds of the Knapp survey, made after the partition thereof, and the testimony showing that parties claiming under those deeds had possession of and paid taxes on portions of said west two-thirds were admissible as evidence of title in appellee to the east one-third of said survey. I think those deeds and that testimony were inadmissible, and should have been excluded by the trial court. I concur in all the other rulings made by this court.

### On Motion for Rehearing.

HODGES, J. In reversing this case we did not discuss and specifically pass upon each one of the different assignments of error presented in appellant's brief. We intended, however, to be understood as overruling all the assignments except those expressly sustained. The one which is referred to and insisted upon in this motion for a rehearing as grounds for rendering the judgment in appellants' favor involves a principle of law which we do not think is applicable to the facts of this case.

The motion is overruled.