### J. R. ADAMS v. A. L. CRENSHAW ET AL.

#### No. 6278.

1.  **Surveys—Calls—Charge of Court.**—Where a survey is in litigation which for a beginning calls for a corner of an older survey in dispute it is error in the charge of the court to instruct the jury that the survey in dispute must begin upon the corner of the older survey as actually run rather than as called for in the field notes.   The jury must determine from the testimony where the lines and corners are.

2.  **Same.**—Where the surveys in dispute call for an older but abandoned survey, and there is testimony tending to show a marked line of the older survey, it is not error to refuse a charge directing the jury to construct the survey from other calls testified to.   The jury from the entire testimony must locate the land sued for.

3.  **Charge.**—A charge correctly defining the relative values of calls for natural objects, artificial objects, and course and distance in the surveys, that the surveys as actually made were the true boundaries, and charging that the locality of the lines must be determined by all the testimony, is sufficient and all that should be given.   It is improper to direct attention to parts of the testimony as controlling other portions.

APPEAL from Johnson.   Tried below before Hon. J. M. Hall.

October 18, 1883, Adams sued Crenshaw and others in trespass to try title.   The plaintiff claims that the land is included in the Mendoza survey for 2043 acres.   This survey calls for the north lines of the several surveys claimed by the defendants, which are older than the Mendoza. The defendants pleaded not guilty.   The question at issue was the locality of the northern boundary of the Johnson County school lands.   The defendants held under Johnson County and also a survey in name of the Buffalo Bayou & Brazos Railway.   The surveys and connections are shown in the annexed map.

Verdict was rendered for the defendants.   The plaintiff appeals.   The opinion gives additional statement necessary.

*L. B. Davis* and *J. F. Henry,* for appellant, cited Urquhart v. Burle-

son, 6 Texas, 511–14; Jones v. Andrews, 62 Texas, 655–65; Browning v. Adkinson, 37 Texas, 633; Boon v. Hunter, 62 Texas, 592; San Antonio v. Lewis, 9 Texas, 71; Gerald v. Freeman, 68 Texas, 201; Bragg v. Lockhart, 11 Texas, 164; Thompson v. Shannon, 9 Texas, 537.

*M. A. Oates, J. W. Brown,* and *Crane & Ramsey,* for appellees.

GAINES, ASSOCIATE JUSTICE.—This was an action of trespass to try title, and involved the question of the true boundary lines between the Urbano Mendoza survey and the surveys of the Johnson County school lands. The appellant, who was plaintiff below, was admitted to be the owner of the Mendoza survey, and defendants were admitted to be the owners of the lands south of the south boundary line of the plaintiff's land.

The Johnson County school land surveys are older than the Mendoza, and adjoin each other on the east and west in the following order, beginning on the east: No. 1, No. 2, No. 4, and No. 5. The field notes of the Mendoza call for its east line to run south 570 varas "to a stake in north boundary line of Johnson County school land; thence west 1047 to stake in corner of same; thence south 1241 varas to a stone; thence west 4427, stake; thence south 531 varas, stake in corner of same; thence west 3414 varas, stake in north boundary line of same; thence north," etc. Survey No. 5 of the school lands calls to begin at northwest corner of survey No. 4, in the south boundary of the Chaffin (an abandoned survey now embraced in the Mendoza); No. 4 calls to begin at northwest corner of No. 2, and No. 2 calls to begin at the northwest corner of No. 1. No. 1 begins at the northeast corner of the W. B. Stephenson survey in the west boundary line of the J. H. Cooper, 340 varas south of Cooper's northwest corner. The field notes of the Cooper call for this corner as being fixed 2007 varas west and 138 varas north from the southwest corner of a survey in the name of Leonard. The evidence shows that most probably the call for 2007 varas west and 138 varas *north* of the Leonard should have been 2007 varas west and 138 varas south of the Leonard. The Cooper corner seems to be well identified as corresponding with the latter call. One witness testified to having seen it originally established, and to having known it ever since.

The surveyors introduced as witnesses by plaintiff testified that establishing the beginning corner of survey No. 1 of the school lands by the corner of the Cooper on the ground as identified by the witnesses and running the school land surveys by course and distance it established the north boundary lines of these surveys and the south boundary of the Mendoza where plaintiff claimed them to be. A witness for defendants, who also surveyed the lands, testified that establishing the northwest corner of the Cooper by course and distance as called for in its field notes

and running the lines of the school land surveys from that point the courses and distances called for fixed the north boundary of those surveys as defendants claim them to be. These surveys are in the prairie with no natural objects to mark the corners or lines. There were some branches called for in the school land surveys, and each of the surveyors testified that he found the branches on the line run by him at the proper distances. Each also testified to finding some of the northern corners of these surveys on the line run and claimed by him to be the true line.

Such being the evidence the plaintiff requested the court to give the following charge:

"You are instructed that the field notes of surveys Nos. 1, 2, 4, and 5 of the Johnson County school land, as well as the field notes of a number of other surveys, have been used in evidence, and that said survey No. 2 calls to begin at the northwest corner of No. 1, and No. 4 to begin at the northwest corner of No. 2, and No. 1 begins at the northeast corner of the W. B. Stephenson (which is now the Margaret Edmonds) which is located on the J. H. Cooper survey. You are instructed that the first object of your inquiry will be to ascertain from the field notes of said surveys, together with all the other evidence bearing on that point, where the surveys of the Johnson County school lands were actually located on the ground by the original locator, beginning with No. 1 and then taking each one in succession; and in ascertaining the beginning corner of survey No. 1 you will look to find the true northwest corner of the J. H. Cooper as actually located on the ground by the original locator, and you will take the said northwest corner as actually located on the ground, if you can find it, to be the true corner of the said Cooper, nothwithstanding the field notes of the J. H. Cooper may call for said corner as located elsewhere; and from this corner of the Cooper which you find to have been actually located on the ground you will ascertain the true northeast corner of the W. B. Stephenson survey, now Margaret Edmonds survey, which is located on said Cooper survey, and from this corner will run and ascertain the true boundary of said survey No. 1 according to the calls given in the field notes of the same by the locator."

The court refused to give the instruction, and its refusal is assigned as error. We are of opinion that the court did not err in its ruling. It may be conceded that the northwest corner of the Cooper as actually established was proved beyond controversy to be as plaintiff claimed—that is to say, 276 varas south of the point called for by its field notes. Still it is probable that the officer who surveyed the school lands may have established his beginning corner from the point fixed as the corner of the Cooper by the course and distance called for in its field notes. The question for the jury to determine was not where the corners of the Cooper or Stephenson surveys were actually established, but where the lines of the

school land surveys were in fact run on the ground.    To have instructed the jury that they should take the corner of the Cooper as actually located on the ground as the true corner and by it establish the northeast corner of the Stephenson and the southeast corner of survey No. 1 of the school lands, when the surveyor may have been misled by the field notes of the Cooper and may have mistaken the actual corner, would have been clearly erroneous.

The field notes of surveys 4 and 5 show that their north boundary lines were coincident with the James Chaffin survey, which had been abandoned and which was covered by the Mendoza patent.    The main witness for defendant testified that in running the north line of the school land surveys as claimed by defendant he found on the line corners corresponding to the calls in the field notes of the Chaffin, and to the effect further that he ran the lines called for in the field notes of the Chaffin and found its south boundary coincident with the line run by him as the north boundary of the school lands.    The Chaffin survey was wholly in the prairie. Under this state of facts the plaintiff requested the following instruction:

"You are further instructed that after you have located the north boundary lines of Johnson County school lands Nos. 1 and 2 on the map which is in evidence before you, in accordance with the instructions heretofore given, then you will proceed to locate the north boundary lines of surveys Nos. 4 and 5, and if you find from the evidence that said surveys call to begin at the northwest corner of survey No. 2 and to run west with the south boundary line of a survey for —— acres in the name of J. Chaffin, and if you should find from the evidence that an extension west of the north boundary line of said survey No. 2 would not run with and on the same ground as the south boundary line of said Chaffin survey, and that to reach said Chaffin line beginning at the northwest corner of said survey No. 2 you would have to change the course of the line of said surveys Nos. 4 and 5, then in that case you will disregard the Chaffin line altogether and locate the north boundary line of said surveys Nos. 4 and 5 by extending the north boundary line of said survey No. 2 west the distance the north line of said surveys Nos. 4 and 5 call for, and say in your verdict where said lines are located in reference to the Douglass line—that is to say, whether it would be on the Douglass line or north of it, and if north the number of varas; unless you should find from the evidence that the surveyor at the time he run the north boundary of said surveys Nos. 4 and 5 did actually run upon the Chaffin line as then run and is well known at this time, then in that case you will follow the said Chaffin line, and you will say if you follow the Chaffin line how far it is north of the Douglass line."

The court refused to give the charge, and in this there was no error. There was about as much evidence to establish the corners of the Chaffin as there was to establish any of the corners of the school lands, and as they were distinctly called for in the field notes of surveys No. 4 and No.

it would have been improper to charge the jury to disregard them. The evidence touching their locality was properly left to the jury to be considered and weighed in connection with all the other evidence in the case.

In his seventh assignment of error the appellant complains that "the court erred in its general charge to the jury, because the same was a general exposition of the law governing boundary lines, and was not specially applicable to the facts in this case, but it was applicable to all cases alike, having no special application to the facts in issue in this case."

The charge we think correctly presented the law of the case. The jury were properly instructed as to the relative value of calls for natural objects, artificial objects, and course and distance in a survey, and were correctly told that the lines as originally run on the ground by the surveyor were the true boundaries of the respective surveys, and that they must determine their true locality from the evidence before them. We do not see that the court could have gone further without charging upon the weight of the evidence. At all events the charge was correct as far as it went, and it was the duty of appellant to ask additional charges if he deemed them necessary to a proper presentation of his case.

In reference to the last assignment, which complains that the verdict of the jury is contrary to the evidence, we need only say that there was evidence sufficient to support the verdict, and it was for the jury to determine the conflict. The burden was upon appellant to show that the line in controversy is where he claimed it to be, and we think the jury were well warranted in concluding upon a consideration of all the evidence that he had failed to make out his case.

The judgment is affirmed.

*Affirmed.*

Delivered May 24, 1889.