## T. J. HOLLAND v. A. C. THOMPSON.

### No. 2130.

**1. Boundary Line—Call for Unmarked Line—Intent.**

The owner of a survey of land had it re-surveyed and divided into numbered quarter-sections with corners for each established on the ground, and afterwards sold two of such quarters, designating them by their numbers, but instead of calling for the corners thereof as established by the re-survey, his deed called, as did the field notes of the original survey, for an unmarked line of an adjacent survey, which lay in fact beyond the distance called for. Held, that the question of what land the grantor intended to sell and convey was one of intention to be gathered by the jury from all the facts and circumstances in evidence.

**2. Same—Construction.**

In such case the rules that a call for an unmarked line will control a call for course and distance, and that the presumption is that the surveyor actually ran the lines upon the ground, do not apply, and it was error for the court to so charge.

**3. Same—Estoppel.**

Where the purchaser of the two quarter-sections fenced one of his lines in accordance with the corners established by the re-survey, and declared that he did not claim the land between such fenced line and the line of the adjacent survey, he will be estopped thereby as against another purchaser who, relying on such acts and statements, purchases from the common grantor such land lying next to the adjacent survey.

**4. Same—Burden of Proof.**

The burden of proof is on the plaintiff and those claiming under him to establish that the grantor intended to convey more than the land contained in the two quarter-sections, as defined and marked on the ground by the re-survey.

APPEAL from Clay. Tried below before Hon. GEO. E. MILLER.

*W. G. Eustis,* for appellant.—1. An actual survey on the ground designated and marked by substantial monuments will prevail over a call for an open unmarked line in the prairie. Blumberg v. Mauer, 37 Texas, 6; Koenigheim v. Miles, 67 Texas, 123; Robinson v. Douthit, 74 Texas, 104; Jones v. Powers, 65 Texas, 212, 214-215; Dalby v. Booth, 16 Texas, 566; Lumber Co. v. Hart, 26 S. W. Rep., 1.

2. The law presumes that every officer does his duty, and the presumption is, that the surveyor who located the surveys of land in controversy actually ran his lines as described in said field notes to the points called for therein, and the burden is upon the party who now challenges the correctness of the same, to establish that fact. Clark v. Hills, 67 Texas, 148; Scott v. Pettigrew, 12 S. W. Rep., 163; Koenigheim v. Miles, 67 Texas, 114; Windus v. James, 19 S. W. Rep., 873; Garrison v. Coffey, 5 S. W. Rep., 638; Echols v. McKie, 60 Texas, 41.

3. The court erred in refusing to give to the jury the charge asked by defendant, which charge in substance submitted to the jury the question as to whether the land described in the deeds of plaintiff and defendant was actually surveyed and marked on the ground before sale and the deeds made with reference to said surveys, and also the question of estoppel. Jones v. Powers, 65 Texas, 207; Hefner v. Downing, 57 Texas, 576, 580; Timmons v. Whitehead, 58 Texas, 290, 295; Land Co. v. Gardner, 25 S. W. Rep., 739.

*Stine, Chestnutt & Hurt,* and *Templeton & Patten,* for appellee.—
1. An actual survey will not control the calls in a deed where such survey is not made by the vendor and vendee in contemplation of a purchase and sale, and for the purpose of defining the land to be sold, or where the evidence shows an intention to disregard such actual survey.

2. The call for the Montague County school land's north line being the most certain call in the field notes of survey No. 20 in controversy, and the evidence showing that it was intended that said survey No. 20 should go to said school land, said call will control and said school land line constitutes the true south boundary line of survey No. 20 and of plaintiff's land.

3. The refusal of said requested instruction was proper for the reason that the deed from the T. & P. Railway Co. to Bolton shows an intention to disregard the survey made by Patterson, and to make the south line of the grant coincide with the south line of the original survey and the north line of the Montague County school land.

HUNTER, Associate Justice.—Appellee sued appellant in the District Court to recover a strip of land 1020 varas long east and west, by 400 varas wide north and south, containing about seventy-two acres, being part of section number 20 of the M. E. P. & P. Railroad surveys in Clay County, which section was located in 1861, on the north and west sides of the northwest corner of the Montague County school lands, and its south and east lines call to run with the north and west lines of said school land.

The field notes of number 20 as patented are as follows: "Beginning on the southeast corner of survey No. 19, stake in prairie; thence east 935 varas, a stake in prairie; thence south, crossing Frog creek, 923 varas, a stake in north line of a 4-league survey made for Montague County school land; thence west 1815 varas, the northwest corner of Montague County school land; thence south 977 varas, a stake in the west line of said school land; thence west 1020 varas, a stake; thence north 1900 varas, the southwest corner of survey No. 19; thence east 1900 varas, to the place of beginning."

The record, in effect, discloses that this survey number 20 was one of a series of section surveys made, or rather platted, from surveys lying north and west of it, and when made or platted was supposed to connect with the lines of the Montague County school land survey, as the map then in use in the surveyor's office of Clay County showed the lines to be.

The Texas & Pacific Railroad Co. became the owner of section 20 prior to January 1, 1889, and in the winter of 1888-9 caused the same to be surveyed by C. B. Patterson, who from 1882 to 1888 had been surveyor of Clay County, and caused its corners to be fixed and marked on the ground, by placing stones thereat. At the same time it was divided into quarter sections of 160 acres each, and at the corners of each quarter section stones were set up to mark and definitely fix the same. These

quarter sections were numbered; the east quarter was marked and designated as number 1, then followed on the west numbers 2 and 3, and the south quarter was designated as number 4.

Mr. Patterson's undisputed testimony is that he found the full 640 acres within the lines he run and marked for section number 20, and that the south line of number 20 as run out, marked and established by him lacked 447 varas of reaching the north line of the Montague County school land, and the east line of quarter section number 4 lacked 347 varas of reaching the west boundary line of the said Montague County land.

The record also shows that one R. L. Bolton was one of Patterson's chain carriers, and assisted in running and marking the corners, and, of course, knew the corners of each quarter section; and on January 8, 1889, only a few weeks after this survey was made by Patterson, bought from the Texas & Pacific Railroad Co. quarter sections numbers 2 and 3, but the deed made to him, while purporting to convey quarter sections 2 and 3 of section 20, does not call for the stones set up by Bolton and Patterson, but calls for the lines and northwest corner of the Montague County school lands. The property is described as follows: "Known as lots Nos. 2 and 3, in survey No. 20; beginning at a stake 46.6 varas west of a stake set for the southeast corner of survey No. 19; thence south 923 varas, a stake in the north line of a 4-league survey made for Montague County school land, which stake is 978.6 varas west of a stake set for the southeast corner of said survey No. 20; thence west with the north line of said Montague County school lands 836.4 varas, to a stake the northwest corner of same; thence south with the west line of same 91.5 varas, which is 885.5 varas north of the western southeast corner of said survey No. 20; thence west 1020 varas, a stake in the west line of No. 20; thence north with the said west line 1014.5 varas, a stake, the original northwest corner of survey No. 20; thence east with the north line of said survey No. 20, 1856.4 varas, to the place of beginning—the same containing 320 acres more or less."

To run the lines of number 20 to the lines of the Montague County school land as now established would give it 924 acres, instead of 640, being 284 acres excess. To run the lines of appellee Thompson's quarter sections numbers 2 and 3 as he claims them, would give him 470 acres, instead of 320, or 150 acres more land than the number of acres called for in his deed, and would take away from appellant Holland's quarter section number 4 about 72 acres, leaving him short that much.

The evidence shows that when Bolton bought quarter sections 2 and 3, he built a fence on the south line of number 3 as run and established by Patterson; and Watkins, the surveyor who in this case surveyed the land under order of the court, found the stones set by Patterson and Bolton at the corners of Thompson's south fence as built by Bolton, and as it stood at the time of the trial.

When Holland, the appellant, bought quarter section No. 4, the agent of the Texas & Pacific Railroad Co., who had had Patterson to survey

and divide up the section, showed him the lines and corners, and sold him all the land lying south of Bolton's fence, as being contained in quarter section No. 4. Bolton was then living on the land, and, as appellant testifies, recognized the fence as his south line. Bolton afterwards sold to Thompson, the appellee, who testifies that Bolton claimed that he had not fenced all his land on the south.

We are of opinion that the true issue in this case is as to what land the Texas & Pacific Railroad Co. sold and intended to convey to R. L. Bolton by his deed bearing date January 8, 1889.

Appellant complains of the following charges given by the court:

"When, in the field notes of a survey, open unmarked lines of adjacent surveys are called for, and where from the other calls of such adjacent surveys the portion of such unmarked lines can be ascertained with accuracy, and there arises a controversy as to whether a call for course and distance or a call for such unmarked line of an adjacent survey shall prevail, such survey line should be given the dignity of an artificial object, and prevail over course and distance, unless the jury find and believe from the evidence that the locating surveyor was mistaken as to the position of such adjacent survey line when calling for it."

"The law presumes that every officer does his duty, and the presumption is that the surveyor who located the surveys of land in controversy actually ran his lines as described in said field notes to the points called for therein, and the burden is upon the party who now challenges the correctness of the same to establish that fact."

We are of opinion that these charges, while in the abstract correct, are not applicable to a case like this, where the owner of the land—the railroad company—had it actually surveyed and divided into quarter sections and numbered, with corners definitely fixed and established on the ground, and afterwards sold off portions thereof, designating such portions by their quarter section numbers.

The question is, what land did the railway company intend to sell and convey to Bolton; and this question should have been submitted to the jury as one of intention to be gathered from all the facts and circumstances in evidence, unembarrassed by the rules and presumptions set forth in these charges. There was a conflict between the calls for distance and the calls for the lines and corners of the Montague school land, and the footsteps of the surveyor in subdividing the section 20 accord with the calls for distance. If the railway company intended to convey according to this work done on the ground in subdividing for sale, that intent concurred in by Bolton would control the conflicting calls for the lines of the Montague school land, which was but a suppositious call, and not in reality where the map then showed it to be. In such state of case it was misleading to give a charge which the jury would naturally have interpreted as giving undue dignity and weight to the call for the lines of this old survey. We cannot account for the verdict upon any other hypothesis. Best v. Splawn, 33 S. W. Rep., 1005;

Boon v. Hunter, 62 Texas, 582; Railway v. Thompson, 65 Texas, 186; Koenigheim v. Miles, 67 Texas, 122, 123.

But if Bolton fenced to his south line as he knew it to be, and as it was actually surveyed on the ground by the railroad company and by him, and Holland, relying on such designation of boundary, bought the land lying south of this fence, then we think that appellee Thompson might be estopped from claiming the land in controversy, by reason of being in privity of estate with Bolton. Dalby v. Booth, 16 Texas, 566; Bolton v. Lann, 16 Texas, 112, 114; Blumberg v. Mauer, 37 Texas, 6, 7.

The burden of proof was on the plaintiff Thompson to establish that the land in controversy is the land sold and intended to be conveyed by the Texas & Pacific Railway Co. to R. L. Bolton, and the jury should have been charged to that effect. Clark v. Hill, 67 Texas, 148; Scott v. Pettigrew, 12 S. W. Rep., 163; Windus v. James, 19 S. W. Rep., 873; Echols v. McKie, 60 Texas, 41.

And as these issues were not presented to the jury, we order that the judgment be reversed and the cause remanded for a new trial.

*Reversed and remanded.*