## John Ford v. Lethe Boone et al.

### Decided May 28, 1903.

**1.—Deed—Delivery—Putting on Record.**

Where a father executed a deed of land to his minor children and on the same day had it recorded, and thereafter retained possession of it until he produced it on the trial of a suit brought for partition of the land, there was a sufficient delivery of the deed.

**2.—Bastards—Inheritance from, by Mother—Putative Father Excluded.**

By virtue of the statute which makes bastards capable of inheriting from and through their mother and of "transmitting estates," the entire estate of a bastard dying intestate passes to his mother, to the exclusion of the putative father. Rev. Stats., art. 1700.

**3.—Deed—Parol Evidence Varying—Delivery.**

Where a father executed a deed to his children and had it recorded, thereby making a delivery of it, parol evidence was inadmissible to show that he did not intend to give possession of the land until the youngest child became of age.

**4.—Same—Title Vesting—Subsequent Payment of Purchase Money.**

The deed of a father to his children having been delivered by virtue of its record, the fact that the father's vendor lien notes, given to his grantor for the purchase money of the land, were still outstanding and were subsequently paid by the father, in nowise affected the absolute and full title which the deed had vested in the children.

**5.—Trespass to Try Title—Pleading—Rents.**

Where in trespass to try title plaintiff alleged that defendants had forcibly taken possession of the land and appropriated the rents and revenues thereof, this was sufficient to admit evidence that defendant had rented out the land and received the rents from his tenants.

Appeal from the District Court of Wharton. Tried below before Hon. Wells Thompson.

*M. D. Ivey* and *John D. Linn,* for appellant.

GARRETT, CHIEF JUSTICE.—This was an action of trespass to try title and for partition brought by Lethe Boone, as the heir of her bastard son, Raymond Ford, deceased, against John Ford, Walter Ford, Julia Ford and Johnnie Ford, for the recovery of a one-fourth interest in a tract of 53 2-3 acres of land situated in Wharton County. Plaintiff is the mother of the defendants, Walter, Julia and Johnnie Ford, who, when the suit was brought, were of age, except Johnnie, for whom a guardian ad litem was appointed. Walter and Julia Ford disclaimed title. There was a trial by jury which resulted in a verdict and judgment for the plaintiff against all the defendants for one-fourth of the land in controversy and against John Ford for $80.46 rents, and for Johnnie Ford for one-fourth of the land; and the said Walter and Julia Ford having disclaimed, it was ordered that they take nothing. Judgment was rendered for John Ford for one-fourth of the land; one-half was perhaps intended. Partition was decreed and commissioners were appointed.

- The plaintiff, Lethe Boone, on May 9, 1894, was the mother of the defendants Walter, Julia and Johnnie Ford and of Raymond Ford, all minor children; and the defendant John Ford was their reputed father. The defendant John Ford and the plaintiff were never married. On the date above named the defendant John Ford bought the land in controversy from R. E. Vineyard and wife, who executed him a deed therefor in consideration of $5975, of which $1000 was paid in cash. Notes were executed by John Ford for the balance of the purchase money, and the vendor's lien was reserved in the deed to secure their payment. The purchase money was afterwards fully paid by the said John Ford, and on December 23, 1899, Vineyard executed to him a release of the vendor's lien. John Ford bought the land for the said four children of the plaintiff, and endeavored to get Vineyard to make the deed direct to them, but Vineyard declined to do so on account of the deferred payments of purchase money. On the same day, to wit, May 9, 1894, John Ford executed a deed by which he conveyed the land to Walter Ford, Julia Ford, Johnnie Ford and Raymond Ford, for a recited consideration of love and affection and one dollar. Immediately after the execution of these deeds and on the same day the defendant took them both to the office of the county clerk and had them recorded, and after their record he got them from the clerk and kept them in his possession until they were produced by him at the trial of the case in the court below. The evidence was sufficient to show a delivery of the deed, both as to intent so to do and the record and subsequent custody thereof. At the time of the purchase of the land and for some time thereafter the plaintiff and the defendant

John Ford were cohabiting and lived upon the property in controversy. The defendant John Ford had been married to a woman from whom he had not been divorced, and who was living in Houston. John Ford owned a tract of 140 acres of land about three and one-half miles from the land in controversy, and occupied and cultivated both of them, living most of the time on the latter tract. Raymond died in 1901, unmarried and without issue. He was only about 8 years of age at his death. The plaintiff testified that John Ford was his father.

At common law a bastard has no heritable blood, but by statute in this State he may inherit from and through his mother, and is made capable of transmitting estates. The article of the Revised Statutes is as follows: "Article 1700. Bastards shall be capable of inheriting from and through their mother, and of transmitting estates, and shall also be entitled to distributive shares of the personal estates of any of their kindred, on the part of their mother, in like manner as if they had been lawfully begotten of such mother." The appellant here contends that under this statute the mother can not inherit from a bastard, or, if she does, that the reputed father inherits equally with her. It is claimed that "transmitting estates" means that the estate shall descend and vest according to the statute. The capacity of transmitting estates as conferred by the statute seems to be general, but the statute must be construed with reference to the entire pretext. The bastard is excluded from inheriting through or from his putative father for the reason that the father is uncertain, and for the same reason the father should not inherit from him. Hence "transmitting estates" must be construed so as to exclude the father and pass the entire estate to the mother, since the brothers and sister could only inherit through the father. The language is not clear, but the general purpose of all such statutes changing the common law in this respect is to give the reciprocal right of inheritance to both the bastard and his mother, and the statute of this State seems to intend to make the blood of the bastard heritable only on the part of the mother, but fully so in that respect. 24 Am. and Eng. Encyc. Law, 412, et seq.

The deed was executed and recorded with the intent to deliver it to the grantees therein, and the evidence was sufficient to show the delivery. The court ruled correctly in excluding the evidence of the defendant offered to show that he did not intend to give possession of the land until the youngest child Raymond became of age. This would have been to allow evidence to show his intent as to the effect of the deed, which would have been inadmissible as varying the terms of the deed by parol evidence.

John Ford had full title to the land upon the conveyance to him by Vineyard except as to the right of Vineyard to collect the purchase money, and had a perfect right to convey the same, subject only to the lien for the purchase money. The purchase money notes were his personal obligations for which he was bound independent of the land, and his payment thereof invested him with no better right to the land, as

between himself and third parties, than he had already acquired by his deed from Vineyard. His conveyance to Walter, Julia, Johnnie and Raymond Ford vested in them the full title to all of the tract of land, and not merely to such proportion thereof as the cash payment made by him bore to the whole of the purchase money. Stephens v. Motl, 82 Texas, 81; Minter v. Burnett, 90 Texas, 249.

The question of homestead does not arise in the case. There was never any intention to make the land his homestead. He bought it expressly for the children of the plaintiff, and on the refusal of Vineyard to convey it directly to them executed the deed to them at once and on the same day that he received the title. There was never any appreciable lapse of time in which the homestead could attach to the land, or any occupation of it as such, or any intention to so occupy it. The wife, from whom he had never been divorced, did not live with him, and had not done so for a long time prior to the purchase of the land. She lived apart from him in another county. But it is not necessary for us to determine whether or not she would be entitled to a homestead right in the 140 acres occupied by the defendant John Ford, it being clear that no such right ever attached to the land in controversy.

We are of the opinion that the pleadings of the plaintiff makes sufficient allegations for the admission of evidence to show that the defendant John Ford was liable to the plaintiff for rents. He was not a tenant in common, and is shown to be entitled to recover one-half of the land only on the disclaimer of Walter and Julia Ford. The land was owned jointly by the plaintiff and the said Walter, Julia and Johnnie Ford. The petition so averred, and further alleged that while the said John Ford had no interest therein, he forcibly took possession of the land and remained in possession thereof cultivating, using and enjoying the same and appropriating the rents and revenues thereof during the years 1901 and 1902 to the exclusion of the plaintiff and the other defendants who were the real owners thereof. It was not necessary for the plaintiff to allege that the defendant had rented the land out and received rents from his tenants in order to entitle her to recover rents. The question of the lack of evidence to support the verdict in favor of the plaintiff for rents is not raised by any proper assignment of error accompanied by a statement from the record, and will not be considered.

The assignments of error upon the charge of the court and the refusal of special instructions are not accompanied by statements as required by the rules, and will not be considered. We have considered, however, the legal questions arising out of the record and find no error, though the construction of the statute on the right of a bastard to receive and transmit estates is not free from difficulty.

The judgment which awards the defendant John Ford only one-fourth of the land will be reformed so as to decree him one-half thereof, and as reformed will be affirmed.

*Reformed and affirmed.*

## ON MOTION FOR REHEARING.

We erred in the conclusion of fact that Lethe Boone was the mother of Walter, Julia and Johnnie Ford. The evidence does not show who their mother was. But we do not perceive that this error of fact can make any difference in the disposition of the case. The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.