HAMILTON et al. v. STATE.†

(Court of Civil Appeals of Texas. Austin. Nov. 13, 1912. On Motion for Rehearing, Jan. 15, 1913.)

1. PUBLIC LANDS (§ 173*) — RECOVERY BY STATE—PROOF.

In an action for public free school land and rents, the state need not prove title, but can recover unless defendants show title either from the government of Spain or the state of Texas.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

2. PUBLIC LANDS (§ 173*) — RECOVERY BY STATE—EVIDENCE.

In an action by the state to recover public free school land and rents, evidence *held* not to establish defendants' right to the land under the act of February 10, 1852, relinquishing lands described as: "County of Webb: Antonio Guerra, three porciones, jurisdiction of Palafox; heirs and assigns of Joaquin Galan, one porcion, jurisdiction of Palafox."

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

3. PUBLIC LANDS (§ 176*)—ASSENT OF GRANTEE—PRESUMPTION.

Where land was granted by a legislative act which did not define its location, but required the grantees to have it surveyed, and where subsequently field notes of a survey by the county surveyor were returned to the land office and a patent issued in accordance therewith, the grantees will be presumed to have accepted the patent and thereby to have become bound by the survey, in the absence of any showing of objection or dissent.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 571–575; Dec. Dig. § 176.*]

4. PUBLIC LANDS (§ 173*) — RECOVERY BY STATE—EVIDENCE.

In an action by the state for public free school land, the defendants could not object that the field notes and patent of a survey of a land grant, described as a certain "three porciones, jurisdiction of Palafox," which they claimed to cover the land in controversy, were inadmissible in evidence because they described land outside the jurisdiction of Palafox, where they did not in any way connect themselves with any outstanding titles; such issue being one which could be raised only by the state or by heirs or assigns of the grantees had they refused to accept the patent issued on the survey and pursuant to the grant.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

5. BOUNDARIES (§ 11*)—SURVEYS—LOCATION OF CORNERS.

A call for a line or corner of another survey, made under a misapprehension as to the true location of such survey, will not control as to the location of the survey calling for such corner or line.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 92–94; Dec. Dig. § 11.*]

6. PUBLIC LANDS (§ 173*) — RECOVERY BY STATE—EVIDENCE—LOCATION OF GRANT.

A grant of land located only by reference to a jacal and ranch belonging to a certain person was not available as a defense to the state's suit for public free school land, where there was no proof of the location of such jacal and ranch.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

† Writ of error pending in Supreme Court.

**7. EVIDENCE (§ 178*).—EXCLUSION OF TRANS-LATION MADE FROM COPY.**

In the state's action for public free school land, the court properly excluded evidence that the translation from the Spanish of a certain instrument relied on by defendants was incorrect, where such evidence was based on an inspection of a copy of the original, and it did not appear that the original was lost.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 580–594; Dec. Dig. § 178.*]

**8. PUBLIC LANDS (§ 176*) — VALIDITY OF GRANT—CERTAINTY OF DESCRIPTION.**

A mere grant of a small tract of land for pasture, without giving a description from which it could be identified or specifying any particular quantity, was void for uncertainty.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 571–575; Dec. Dig. § 176.*]

**9. PUBLIC LANDS (§ 173*) — DETENTION — MEASURE OF DAMAGES—EVIDENCE.**

While the measure of the damages which the state may recover for the unlawful detention of public free school land is the reasonable rental value of such lands for the period detained, evidence of the amount for which such lands were rented by defendants to a third person was admissible to show such value.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

**10. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

In the state's action for public free school land, the admission of evidence of the rental price at which defendants had leased the land to a third party, if error, was harmless where the state's recovery was less than the amount thus proven, and there was no evidence to show a less rental value than that recovered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

*On Motion for Rehearing.*

**11. PUBLIC LANDS (§ 173*) — ACTION FOR RENTS—EVIDENCE.**

In the state's action for rents and public free school land detained by defendants, evidence *held* to support a finding for $6,000 rents.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

**12. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.**

Where, in the state's action for public free school land and rents, the defendants claimed under various grants, the exclusion of an ancient map of the jurisdiction in which the grants lay, if error, was harmless where it would not have aided in locating any of the grants.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

**13. TRIAL (§ 202*)—PRELIMINARY STATEMENT BY COURT—NECESSITY.**

The court is not required to make any preliminary statement in its charge to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 474, 477, 482; Dec. Dig. § 202.*]

**14. EVIDENCE (§ 596*)—DUTY OF JURY—PREPONDERANCE OF EVIDENCE.**

The jury should decide all issues according to the preponderance of evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2446–2448; Dec. Dig. § 596.*]

**15. APPEAL AND ERROR (§ 756*)—BRIEFS.**

In the state's action to recover public free school land and rents, it was not improper for counsel for state to affix to their brief a map made by them as illustrative of their contentions, where they made no claim that such map was in evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3091; Dec. Dig. § 756.*]

**16. BOUNDARIES (§ 37*)—GRANT—LOCATION—EVIDENCE.**

Where a grant was located by reference to the "Laredo Crossing," a witness' testimony as to the location of such crossing was valueless to establish a valid grant where the effect would be to locate the grant in a town whose officers could not legally make such a grant.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

**17. JUDGMENT (§ 525*)—RECOVERY BY STATE—EVIDENCE—JUDGMENT.**

In the state's action for public free school land, the recitals of a judgment in another action against the state that the land in controversy in the present suit was titled under the Spanish government was incompetent to show that it did not belong to the state of Texas, where such recitals were immaterial to the issues of the former case.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 968; Dec. Dig. § 525.*]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by the State of Texas against Claude Hamilton and others for public free school land and rents. From judgment for plaintiff, defendants appeal. Reformed, rendered, and motion for rehearing overruled.

James B. Wells, of Brownsville, G. R. Scott and Boone & Pope, all of Corpus Christi, Charles Rogan, of Austin, and A. C. Hamilton, of Laredo, for appellants. James D. Walthall, of San Antonio, and John L. Terrell, of Austin, for the State.

*Findings of Fact.*

JENKINS, J. Some time prior to 1804, the Spanish government granted to Joaquin Galan in what is now Webb county, Tex., a tract of land shown on the first map hereinafter set out, with corners on the Rio Grande marked on said map "Rincon de Galan" and "San Pedro creek," with back corners shown on said map at Serrito Prieto and El Almud. In 1805 Galan sold this land to Manuel Garza. In 1810 the Spanish government disappropriated the front part of this Galan tract for the purpose of establishing the town of Palafox. The part disappropriated extended back 30,000 varas on a line parallel with the general course of the river, and is shown on the map as that part lying between the tract marked Joaquin Galan, patented October 4, 1898, and the Rio Grande. The town of Palafox was destroyed by Indians and its records burned in 1818. As compensation to Garza, the government granted to him a tract of land lying above the town of Palafox, known as Balconcitas, and shown on

said map as Joaquin Galan, patented June 28, 1887. January 8, 1862, Daniel Ruggles, as assignee of said Garza, recovered a judgment against the state of Texas for that portion of the lower Galan tract shown on said map as Joaquin Galan, patented October 4, 1898. On March 13, 1872, the said Ruggles covered judgment against the state of Texas in the district court of Webb county for the upper Galan tract, and the disappropriated portion of the lower Galan tract, with boundaries as indicated on said map. This judgment was void for want of jurisdiction. The land in controversy is that part of the said disappropriated tract shown on said map as "Claude Hamilton land in controversy." The state brought this suit for the land in controversy, claiming the same as public free school land, and for rents on same for a period of 17 years, at the rate of 10 cents per acre per annum.

The defendants pleaded not guilty and relied upon outstanding title by reason of Spanish grants alleged to have been made as follows: One porcion to Joaquin Galan, three porciones to Placido Herrera, and three porciones to Antonio Guerra, and a grant to Rafael Enriquez; said porcions alleged to be of the width of 1,000 varas each, and extending back from the river 30,000 varas; and the issue in this case was as to whether or not there were such Spanish grants, and, if so, did they or either of them cover the land in controversy or any portion of the same. There was a judgment for the state for the eastern portion of the land in controversy, 5,085 varas east and west by 6,504 varas north and south, amounting to 5,857 acres of land, and for $6,000 rent. The western boundary of the tract recovered by the state is indicated on said map by a dotted line, running through the tract in controversy. The map above referred to is as follows:

The following map shows the location of the Galan, the Herrera, and the Guerra alleged porciones, and the alleged Enriquez grant as claimed by appellants; appellants claiming that the Enriquez grant is bounded on the east by the Antonio Guerra, as shown on said map, extending back 30,000 varas, with its upper corner on the river south 68 east of Serrito de los Apaches, which location makes the Enriquez include a portion of the lower Galan tract, and also a portion of the upper Galan tract, known as the Balconcitas grant:

ments of error. Notwithstanding the size of the record and the number of assignments, to our mind the issues are few and the material testimony uncontradicted.

[1] 1. The government of Spain having formerly owned all public domain within the state of Texas, and the state of Texas, as the successor of said government, having become the owner of such public domain as matter of law, it was unnecessary for the state to introduce any evidence of title, but it is entitled to recover in this case, unless it be shown that the land, or a portion there-

## Opinion.

The record in this case is voluminous, and it appears from said record that six days were consumed in hearing the evidence. Appellants have filed a brief of 213 pages, in which they discuss seriatum their 33 assign-

of, has been appropriated by title from either the government of Spain or the state of Texas. State v. Delesdenier, 7 Tex. 97.

[2] 2. The Legislature of this state on February 10, 1852, passed an act whereby all the rights of the state were relinquished in

the lands mentioned in said act, among them being: "County of Webb: Antonio Guerra, three porciones, jurisdiction of Palafox; heirs and assigns of Joaquin Galan, one porcion, jurisdiction of Palafox"—and these lands are not further described in said act. The map introduced by the defendants as showing where they claim the location of the Galan, Herrera, and Guerra porciones shows that said Galan porcion lies 1,000 varas to the southeast of the land in controversy, covering the eastern half of the tract shown on the first map above set out as the H. H. Jeffreys and Santos Benavides, and extending to the river; the same being 1,000 varas front and 30,000 varas in depth. It will thus be seen that this grant is eliminated by the defendants' testimony from consideration in this case.

3. There is no evidence in the record as to the location of the Antonio Guerra three porciones, except said act of the Legislature, which describes same as "in the jurisdiction of Palafox," and the field notes of said survey made by S. M. Jarvis, county surveyor of Webb county, August 15, 1877, and the patent issued to the heirs of said Guerra on survey. These field notes describe said Guerra survey as follows: "Beginning at a mesquite tree 24 inches in diameter on the bank of the Rio Grande at a shoulder of a bend of the river, said mesquite bears north 12½ deg. east 3,454 varas from the northwest corner of survey No. 49 made for J. M. Garcia; thence north 12½ deg. east at 300 varas pass the Arroyo San Cerildo, at 26,-282 varas a pile of rocks for the northeast corner; thence north 77½ deg. west 3,000 varas to a pile of rocks for northwest corner; thence south 12½ deg. west 26,440 varas to a pile of rocks on the bank of the river; thence with the meanders of the river south 85½ deg. east, 1,006 varas." The evidence leaves no doubt that this survey, as described in said field notes and the patent, is located as shown by the map hereinabove first set out at a bend of the river some 12 or 15 miles above the town of Palafox.

[3] 4. Appellants objected to the introduction of the field notes and patent of the Guerra survey upon the ground that said location was erroneous in that it was outside of the jurisdiction of Palafox, and that the act of the Legislature relinquished the right of the state to three porciones in said jurisdiction, and also upon the ground that the owners of said Spanish grant were not bound by an erroneous survey of same made by the state. It is true that the owners of a valid Spanish grant would not be bound by an erroneous survey of the same made by the state, nor by a patent issued on such survey, if they did not accept the same; but, if they did not object to said survey and accepted the land granted in said patent, they would be bound by such patent. There is no direct evidence that the owners of the Guerra accepted the land thus patented, but there is

152 S.W.—71

no intimation in the record in this case that they did not accept the same; and as the grant to them by the state did not define the location of the land, and as they were required by said act to have their land surveyed, and the field notes returned to the land office, and as such survey and patent, which definitely pointed out the land granted to them, inured to their benefit, in the absence of evidence to the contrary, it will be presumed that they accepted said patent. "It is not stating the law too broadly to say that in all conveyances beneficial to the grantee the assent of the grantee is presumed until his dissent be shown." Guggenheimer v. Lockridge, 39 W. Va. 461, 19 S. E. 874. This applies to patents to public lands. Mitchell v. Ryan, 3 Ohio St. 387. See, also, Halluck v. Bush, 2 Root (Conn.) 26, 1 Am. Dec. 60; Ford v. Boon, 32 Tex. Civ. App. 550, 75 S. W. 353; Dikes v. Miller, 24 Tex. 423.

The grant from the state to the Guerra heirs did not describe any land, and was worthless to them as evidence of title to any particular land until they had complied with the statute and had said land surveyed and the field notes returned to the general land office. This land was surveyed at the instance and expense of somebody, and some one returned these field notes to the land office and obtained the patent to the heirs of Guerra. As such survey and patent would have been valueless to any one one except the heirs of Guerra, or those claiming under them, it is but fair to presume that they had this survey made, and that they accepted the patent in full satisfaction of the grant made to them by the state.

[4] As to the patent not conveying the land described therein because it is outside of the jurisdiction of Palafox, if such is the case, that is an issue that could be raised only by the state or by said heirs or their assigns, had they refused to accept said patent. The appellants did not in any wise connect themselves with the Guerra, nor with any of the other alleged outstanding titles. The evidence is by no means conclusive that said grant is not within the jurisdiction of Palafox. In the Ruggles judgment hereinbefore referred to, the court says that said jurisdiction extended five miles up and five miles down the river from the town of Palafox. In the case of State v. Ortiz, 99 Tex. 475, 90 S. W. 1084, it is said that said jurisdiction extended six miles up and six down said river. Neither of these findings were material to any issue in either of said cases, and cannot be held conclusive of the facts therein stated. We know historically and judicially that the jurisdiction of Spanish towns in some instances extended to a much greater distance than is this Guerra survey from the town of Palafox. A sufficient answer to the objection of appellants in locating this survey by said field notes and patent is that, if it is not located as therein in-

dicated, there is not a scintilla of evidence as to where it is located, and consequently the fact that there is a valid Spanish grant for three porciones in the name of Antonio Guerra somewhere in the jurisdiction of Palafox would be no evidence that said grant conflicted with any portion of the land in controversy.

[5] 5. Appellants contend that the Antonio Guerra survey should be located as indicated on their map, for the reason that it calls to begin north 12½ degrees east 3,454 varas from the northwest corner of survey No. 49, made for J. M. Garcia. The evidence shows that said Garcia survey, as now located, begins at Rincon de Galan, which is the lower or southeast corner of the Palafox tract; but the evidence also shows that, at the time the survey of the Guerra was made, this Garcia survey was located, or supposed to be located, adjoining and above the Balconcitas. In so far as the call for the corner of the Garcia is concerned, the location of the Guerra tract will be determined by measurement from said corner as the surveyor who made the Guerra survey supposed it to be at the time of making said survey, and not by the corner subsequently made for said survey, or by the corner as it really existed. A suppositious call for a line or corner of another survey, made under a misapprehension as to the true location of such survey, will not control as to the location of a survey calling for such corner or line. Adams v. Crenshaw, 74 Tex. 111, 11 S. W. 1083; Jones v. Andrews, 62 Tex. 660; Koenigheim v. Miles, 67 Tex. 122, 123, 2 S. W. 81; Holland v. Thompson, 12 Tex. Civ. App. 471, 35 S. W. 20, 21; Sellman v. Sellman, 73 S. W. 48, 49. Besides this, the Guerra survey, if it be begun north 12½ degrees east 3,454 varas from the northwest corner of said Garcia survey as now located, and run thence according to its field notes, will not be as contended for by appellants. On the contrary, instead of the beginning corner being on the river, as shown by appellants' map, it would be about on the division line between the two upper Herrera porciones, as mapped by appellants, and about on the Arroyo de la Angostura, appearing on said map at a distance of about 5,000 varas from the river; and if run thence north 12½ degrees east, as called for in said field notes, 26,282 varas, it would not be in the vicinity of the land in controversy. For the reasons above stated with reference to the location of the Guerra survey, the court properly instructed the jury to disregard said survey in determining whether or not any of the land in controversy was in conflict with the titled land.

[6] 6. We will next consider the location of the three Placido Herrera porciones. This grant has never been recognized by the state. The only evidence of such grant in the record is the following testimonio:

"Fourth seal VN years one thousand eight hundred and six and seven. At the township of San Jose de Palafox on the thirteenth day of December, 1810, I, John Joseph Diaz, lieutenant or chief official of justice for the Governor of this province, Colonel Antonio Cordero and Bustamente, say that to Placido Errera and his children, I give favor and right in the royal name of his majesty, whom may God protect; to each one, one lot fifty varas by every wind for houses and pens as was done by the aforesaid Governor since April 27th, the day on which he founded that site by fixing stakes. I also give them three porciones of land, one thousand varas front with their corresponding depth, for agricultural purposes and for ranches, making as a fixed boundary the jacal and ranch which belonged to the deceased Cristobal Rodrigues, and from said boundary one thousand varas for depth and thousand above which are thirty cordeladas; with entrance and exit accordingly, with the customs, privileges and rights thereunto appertaining forever, for himself and his heirs." The only thing in this testimonio which tends to locate these three porciones is the call for the jacal and ranch which belonged to the deceased Cristobal Rodrigues. There is not a word of testimony in the record to show where this ranch was located, and consequently, had this been a grant in all other respects legal, it would not have served the defendants, the appellants in this case, to show outstanding title as to any of the lands in controversy, for the reason that, without some proof as to the location of the Rodrigues jacal and ranch, it would be impossible to determine where these porciones were located.

[7] 7. The appellants assign error upon the refusal of the court to permit them to prove by Miss Buckley, the Spanish translator in the land office, that the above is not a correct translation of the Herrera testimonio. Dr. J. H. Moore, of San Antonio, who claimed a half interest in said Herrera porciones, appeared as a witness for appellants and produced the original testimonio in Spanish, together with a translation of the same which had been recorded in Webb county. This translation was as above stated. Upon the conclusion of his testimony, he was excused by both sides and allowed to take said original testimonio with him, and the same is not copied in the record. There is, however, copied in the record in connection with the bill of exceptions as to Miss Buckley a certified copy in the Spanish language of said testimonio, taken from the deed records of Webb county, Tex. The objection to the translation of Miss Buckley was that it was not a translation of the original; it appearing that the original was not lost. In sustaining said objection, the court did not err. However, had the translation which it was proposed by appellants to be proven by Miss

Buckley, and which upon comparison with the certified copy in Spanish above referred to appears to be correct, been admitted in evidence, it would not have benefited appellants, for the reason that Miss Buckley's translation, as did the one that was in evidence, made the location of said porciones to depend upon the location of the jacal and ranch belonging to Cristobal Rodrigues. The translation, as proposed to be proven by Miss Buckley, is as follows, after granting the town lots: "I also grant them three porciones of land, each one having a front of 1,000 varas and its corresponding depth for agricultural and ranch sites, taking for a fixed land mark the jacal and ranch that belonged to Cristobal Rodrigues, deceased, and from said land mark 1,000 varas down and 2,000 varas up, which are thirty cordeladas, with their entrances and outlets," etc.

[8] 8. This leaves for our consideration only the alleged Enriquez grant. Appellants read in evidence a petition from Jose Rafael Enriquez for a small tract of pasture land, that he might settle himself in the place called Balconcitas. No other description is given in the petition of said Enriquez. Appellants also read in evidence the following: "Ranch of San Rafael, November 6th, 1812; belonging to the jurisdiction of San Jose de Palafox. I certify on same date and on said day, ranch of San Rafael de Balconcitas, that I, the lieutenant and Chief Justice, having come together with the honorable procurador of this town and accompanied by the instrumental witnesses, in order that with my authority he be given legitimate possession as legitimate owner and possessor of the river bottom, which is at said place above mentioned, with its corresponding pasture land, which runs from the head of the island to the Laredo crossing on the south, and on the north to the Apache Hill, with the privilege that with his consent there be attached some small farmer, otherwise not. And in order that in the future this petition that he makes may bear evidence, and that it have all validity, I signed in the presence of said witnesses wherewith I issue the present and give legitimate possession to said author of this petition," etc. "[Signed] Jose Manuel Garcia."

It will be seen from the above that the only description of the Enriquez grant is that it is the ranch of San Rafael de Balconcitas, and that it runs from the head of the island to the Laredo crossing on the south, and on the north to the Apache Hill. The only evidence in the record as to an island is in the land office map of Webb county, which shows an island extending from about the mouth of Arroya de la Espada, which is the upper corner of the Balconcitas tract, as patented by the state, down the river about two-thirds of the distance to the mouth of San Pedro creek, which is the lower corner of said survey. There is no evidence as to any crossing on the river known as the Laredo crossing. There is a crossing on Arroya de la Espada north of the head of said island some 8,000 varas, known as Pasadizo de Laredo, or Laredo crossing. Apache Hill is shown to be about 1,500 varas west of this crossing. Foster, the surveyor who made the map for the appellants, testified "as to the Rafael Enriquez grant, as delineated on the map, I put that on the map from reading the grant itself, which calls for El Rancho Balconcitas up to the Serrito de los Apaches (the little mountain of the Apaches) and down the river to El Pasadizo de Laredo, and extends out from the river for quantity." It will be seen by reference to the grant that it does not call "from El Rancho Balconcitas," but that the grant is "El Rancho Balconcitas" (the Balconcitas ranch). Also that said grant does not call for any particular quantity of land, and consequently it could not be known from said grant how far out it extended, even were its river corners described therein. Said grant is void for uncertainty, and is not aided by any oral testimony in this record, unless it be that of Eugenio Arce, who testified: "The ranch of Balconcitas is about four or five miles above Palafox." This testimony does not show that said grant conflicts with any part of the land in controversy. The verdict of the jury shows that they found for the defendants as to this grant. The court would have been justified, under the evidence in this case, in peremptorily instructing the jury to find for the state for all of the land in controversy, and we think this is the course that should have been pursued. There was no disputed fact for the jury to determine. Under all of the evidence in the case, taking it most favorably for the appellants, it appears, as matter of law, that no outstanding title to any portion of the land in controversy is shown by the evidence.

9. Appellants file numerous assignments of error as to the proceedings in the trial of this cause; but, notwithstanding the fact that many of them are strenuously insisted upon in lengthy arguments by the able counsel for appellants, we think the most of them are not only not well taken, but do not raise issues of any importance. In none of them is it shown that the court excluded any evidence which would have been of benefit to appellants in locating the alleged outstanding grants, so as to show that they conflicted with the land in controversy, for which reasons all of said assignments are overruled.

[9, 10] 10. Appellants assign error upon the admission of the testimony of H. H. Jeffreys to the effect that he now, and for some years past had, held the land under lease from appellants at a rental of 10 cents per acre per annum; the proposition in support of said assignment being that what Jeffreys

paid is not the criterion as to the amount which the state was entitled to recover, but that what the state is entitled to recover is the reasonable rental value of said land. It is true that what Jeffreys paid is not necessarily the reasonable rental value of the land, but it is a circumstance properly to be given in evidence, tending to show such value. The evidence of A. C. Hamilton, one of the defendants herein, and attorney for all of the others, shows that he had leased said land for 5 years at 3 cents per acre, and for 12 years at 10 cents per acre per annum, which for the acreage recovered by the state (5,857 acres) would amount to $7,906.95. The state recovered only $6,000, and there was no evidence tending to show a less rental value than that recovered by the state.

11. The appellee filed the following cross-assignment of error: "The verdict of the jury in finding for defendants for a portion of the land sued for, and in not finding for plaintiff for all of said land, and the judgment of the court thereon, are not supported by, but are contrary to, the law and the evidence. Under the law and the evidence, the jury should have found for the plaintiff for all the land in controversy, and judgment accordingly should have been rendered; the defendants having failed to establish the outstanding titles or either of them on which they solely relied to defeat plaintiff, and to locate them or either of them upon or in conflict with the land in controversy." We sustain this assignment of error for the reasons above given.

The judgment of the lower court is here reformed so that the appellee, shall have judgment for all of the land sued for, as described in its petition, and for the sum of $6,000 rent, as found by the jury and adjudged by the trial court.

Reformed and rendered.

### On Motion for Rehearing.

[11] 1. Appellants complain of our overruling their assignment with reference to the recovery of rents. The evidence in this case would have sustained a finding of a rental value of 10 cents per acre per annum. The amount found by the jury ($6,000) was only 6½ cents per acre per annum on 5,857 acres recovered by the state in the trial court. The state was entitled to recover about 9,000 acres, the rental value of which, at 6½ cents per acre per annum, would have amounted to $9,896.25 for the 16 years and 11 months for which the state was entitled to recover. The evidence of appellant A. C. Hamilton shows that appellants collected rent from Mrs. Carr at three cents per acre for seven or eight years. Putting this at eight years, which his testimony would justify, it amounts to $1,405.68 on 5,857 acres. His testimony also shows that appellants collected rent from Moore for three or four years at ten cents. Putting this at four years at that price shows that they col-

lected $2,342.80 on the 5,857 acres, or a total of $3,748.48, which, deducted from the $6,000 found by the jury, leaves $2,251.52 for the remaining 4 years and 11 months, or about 7 7/10 cents per acre per annum. When it is recollected that appellants collected rents from Mrs. Carr and from Moore on the entire 9,000 acres, it will be seen that the evidence amply supports the finding of the jury for $6,000 rents.

[12] 2. Appellants complain of this court's not sustaining their assignment of error as to the purported ancient map of Palafox excluded by the trial court. Had this map been admitted, it would have in no wise aided in locating any of the porciones which appellants claimed covered or conflicted with the land in controversy.

[13] 3. Appellants assign as error the preliminary statement made by the court in its charge to the jury. The court is not required to make any preliminary statement in any case, and it is not contended that the statement made contains any affirmative error.

[14] 4. Appellants assign as error the charge of the court wherein the jury were instructed that they should decide all issues according to the preponderance of evidence. If a jury is not to decide an issue according to the preponderance of evidence, how should it decide it?

[15] 5. Appellants complain of the action of the attorneys for appellee in affixing to their brief a map, for the reason that this map was not introduced in evidence, and was not testified to by anybody as being correct. Appellee's attorneys did not claim that this map was introduced in evidence, but was made by them as illustrative of their contentions. The court did not adopt this map as having been introduced in evidence, but made one of its own from the evidence in the case.

[16] 6. Appellants in their motion for rehearing refer to the testimony of one Salinas to show that there is a crossing on the Rio Grande known as the Laredo crossing. This witness' information as to this crossing extended back only to 1884, or about 72 years after appellants claim the Enriquez grant was made, and he says that this crossing is at the town of Palafox. It is not to be presumed that the officials of the town of Palafox granted to Enriquez land covering a portion of said town, as they would have had no authority to grant him any land within said town or its ejidos. If the Enriquez grant extended from the crossing on the Rio Grande in the town of Palafox to Apache Hill, it would have had a front on the Rio Grande of about 6 leagues; and if extended back six leagues, as claimed by appellants, this would have been a grant of 36 leagues. Enriquez in his petition says that he prays for a grant of a small tract of land known as Balconcitas.

[17] 7. Appellants insist in their motion for rehearing, as they did in their original

brief, that the recitals in the Powers judgment show that the land sued for was titled under the Spanish government, and therefore did not belong to the state of Texas. The Powers judgment was a suit by one Ruggles against the state, wherein he sought to recover the rear portion of the original Galan grant. The recitals in this judgment are that this tract of land, described as in the opinion herein, was granted to Galan, but that the Spanish government disappropriated the front portion thereof, extending back six leagues from the river for the purpose of establishing the town of Palafox. These recitals were material to the issues in that case, Ruggles having shown that he was the owner of that portion of the Galan tract not disappropriated by the Spanish government; but the additional recitals in said judgment that the Spanish government "gave and donated the lands above and below the town to the settlers of the same in the form or shape of porciones running back a depth of six Mexican leagues, or 30,000 varas," were not material to any issue in that case, and are not sufficient to show that said land was granted to the settlers of said town. We judicially know that the lots in the town were granted to the inhabitants of said town in severalty, and that the ejidos or commons of the town were granted to such inhabitants in common; but we also know that the other lands within the jurisdiction of Spanish towns were not granted in common to the settlers of the town, but, upon proper proof, particular porciones or portions of said land were granted in severalty to such inhabitants. It devolved upon the appellants in this case (the state having made a prima facie case) to show that the lands within the jurisdiction of the town of Palafox were granted to particular inhabitants, and also to show the location of such porciones. If they were not so granted, they remained the property of the Spanish government, and became the property of Texas, as the successor of said government. However, there is a further recital in said Powers or Ruggles judgment which indicates that only a portion of the lands within the jurisdiction of the town of Palafox may have been granted to settlers of said town, and does not indicate the location of such porciones. The part of said judgment here referred to, after stating that the jurisdiction of Palafox extended five leagues above and five leagues below the plaza of said town is as follows: "Which, or a part of the same, were granted in porciones to the settlers." This does not indicate what part; and, as before stated, the burden was on appellants to show that such grants were made to land covering the land in controversy, or a part thereof.

For the reasons herein stated, the motion for rehearing is overruled.

Motion overruled.