### R. C. WHITE ET AL. v. J. W. McCULLOUGH.

Decided June 10, 1909.

**1.—Transfer of Land Certificate—Circumstantial Proof—Charge—Presumption.**

On the issue of title to land by transfer of the certificate by the grantee thereof to whom it was patented, evidence of such transfer being circumstantial, a charge that proof of payment of taxes, recitals of the transfer in deeds, claim of title, partition and sales of the land thereunder, etc., raised a presumption that such transfer was made, was an erroneous invasion of the province of the jury.

**2.—Same.**

It is never proper for the court to instruct the jury as to presumptions arising from certain facts, except where the presumption is one of law and therefore conclusive, or one of fact required by positive law but rebuttable. Stooksbury v. Swan, 85 Texas, 573, followed.

**3.—Transfer of Land Certificate—Sufficiency of Evidence.**

Evidence in support of a finding by the jury that a land certificate had been transferred by parol by the grantee to whom patent issued, considered, and held insufficient. Harrison v. Fryar, 8 Texas Civ. App., 524, distinguished.

**4.—Evidence—Recorded Instrument—Affidavit.**

An affidavit as to the existence and contents of a transfer in writing of a land certificate by the grantee to whom the patent issued was not an instrument permitted by law to be recorded in the deed records of a county, and a certified copy of such record is not admissible to prove its contents in support of a claim of title under such transfer.

Appeal from the District Court of Fannin County. Tried below before Hon. Ben H. Benton.

*S. F. Leslie, J. C. Baldwin, McGrady & McMahon* and *Thurmond & Steger,* for appellants.

*Richard B. Semple,* for appellee.

HODGES, Associate Justice.—This is an action of trespass to try title, brought by the appellee against the appellants, including the unknown heirs of J. H. Knapp, to recover the eastern one-third of the J. H. Knapp survey situated in Fannin County. The appellee pleaded his title specially, claiming under a transfer, both written and verbal, of the original headright certificate issued to Knapp, before its location, to one W. H. McCullough, and also through a transfer from Knapp to one W. M. Cook. The evidence relied upon to support either or both of the transfers was indirect and circumstantial, and upon its sufficiency depends the right of the appellee to the judgment rendered in his favor in the court below. The evidence shows that a headright certificate for one-third of a league of land was issued to J. H. Knapp on March 1, 1838, and was certified by the Commissioner of the General Land Office as having been approved August 28, 1841. On October 24, 1845, a tract of 1,476 acres, including the land in controversy, was, by virtue of that certificate, surveyed for W. M. Cook in Fannin County. The field-notes and certificate were returned to the land office, and a patent issued in the name of J. H. Knapp July 7, 1855. This original patent was subsequently found among the papers of John McCullough, a brother of W. H. McCullough, through whom appellee claims, and was offered in evidence on the trial. The missing link in the chain of title relied upon by the appellee is as to the transfer of the original certificate from Knapp to W. H. McCullough. It must be conceded that if W. H. McCullough acquired ownership of the certificate the testimony is sufficient to show a good chain of title from him to the appellee. For the purpose of showing a transfer from Knapp to W. H. McCullough the following evidence was adduced: (1) The following endorsements on the file wrapper in the land office: "File 241. Fannin; 2d Class. H. R. Cert. 1/3 League; J. H. Knapp. Filed May 23, 1853." "McCullough, Assignee J. H. Knapp. No. 100 1/3 League. Dr. Roberts applied for these three numbers, 100, 1/3 League; 2866, 640 acres; 291, 640 acres, to be surveyed so as to join B. Flaherty's on the Mission as may be. B. Book 48. March 17, 1839." (2) A special warranty deed from Wm. M. Cook to John McCullough, dated May 5, 1859, purporting to convey an undivided one-third interest in the tract of land surveyed, in consideration of the sum of $1,500 in hand paid by John McCullough, of the County of Galveston. The deed also contained this further recitation: After describing the land, "the headright of J. H. Knapp, located and patented in Fannin Land District, said State, in virtue of certificate No. 446 issued by the Board of Land Commissioners of Harris County, said State, on the 1st day of March, A. D. 1838, which certificate was located and conveyed to me (Cook) by the said J. H. Knapp." (3) A special warranty deed on the same day from John McCullough to Wm. M. Cook, purporting to convey an undivided two-thirds interest in the before-mentioned tract of land, which also contains this recitation: After referring to the date of the certificate, "which certificate was conveyed to Wm. H. McCullough, deceased, by the said J. H. Knapp," and further, "and I being administrator and sole heir of the

said Wm. H. McCullough, deceased, to hereby bind myself, my heirs," etc. (4) A general warranty deed from John M. McCullough to Wm. M. Cook, dated April 9, 1864, purporting to convey a two-thirds undivided interest in the before described land, without naming any consideration. The deed recites that the land was patented in the name of J. H. Knapp by patent dated July 7, 1855, and the certificate for which was conveyed by the said Knapp to "my brother Wm. H. McCullough, whose sole heir I am." (5) A deed of trust from Cook to Samuel A. Roberts as trustee for R. H. Lane, in June, 1869. Also a deed from Roberts as trustee to Lane after foreclosing the deed of trust in July, 1870. And other transfers of the property not necessary here to mention.

J. J. Terrell, Commissioner of the General Land Office, testified by deposition concerning the endorsements found on the certificate filed in his office after the survey. He stated that he had examined the original certificate with the endorsements, and found on the original certificate the words "McCullough, Assignee," also "J. H. Knapp, No. 100, 1/3 League." He did not know by whom those endorsements were made. He stated that the certificate also contained a further endorsement, which was made in the land office and is in a different handwriting from the other two endorsements, "McCullough, Assignee," and "J. H. Knapp, No. 100, 1/3 League." He further testified that the record showed that the patent, after its issuance, was delivered to P. De Cordova, who paid the fee of $1.

J. W. Riddell testified for the plaintiff that the original patent which was introduced on the trial was handed to him by his sister, Mrs. McCullough, after the death of her husband John McCullough. He did not remember what year that was, but thought it was a short time after the death of John McCullough in 1869 or 1870. He sent it to Bonham to Mrs. McCullough's attorney to be used in the trial of a case involving a partition of this land. It was found among his sister's papers. The patent was endorsed on the back, "P. De Cordova, Fannin 2d Class, File 241." He did not know who put that name there. He did not remember whether the endorsement was there when he sent it to the attorney or not.

The testimony on the part of the appellee further showed that W. H. McCullough and John McCullough were brothers, but it is also shown that there were other brothers and also sisters of W. H. McCullough. W. H. McCullough died in 1838. John McCullough died about 1869 or 1870. It was further in evidence that the appellee and those under whom he claimed had paid the taxes on the land since 1881. From 1861 to 1863, 984 acres of the land was assessed against Wm. M. Cook, as assignee of J. H. Knapp. For the next two years following all of the land was assessed against Cook. Thereafter it appears to have been assessed against different parties.

The case was submitted to the jury on special issues, among which were the following questions and answers:

"1st. Did J. H. Knapp transfer to W. M. Cook the land certificate upon which the premises sued for were located and patented prior to its location?

Vol. LVI Civil—25.

"2d. Did John McCullough acquire title to said land certificate through W. H. McCullough from J. H. Knapp as alleged?

"3d. If you should answer that J. H. Knapp sold the land certificate to W. M. Cook, then you will answer whether such sale was by verbal or written transfer, and whether the same was before or after the 17th of October, 1845 (when the certificate was located). If you are unable to find from the evidence whether said transfer, if same was made, was verbal or written, then you will so state.

"4th. If you should find that J. H. Knapp sold the land certificate to W. H. McCullough, then you will answer whether or not such sale was verbal or by written transfer, and whether the same was before or after October 17, 1845."

The jury answered that Knapp did not transfer the certificate to Cook prior to its location. They also found that John McCullough did acquire title to the land certificate through W. H. McCullough from Knapp, as alleged; that such sale was verbal and before its location October 17, 1845. There were other issues submitted which we deem it unnecessary to mention in this connection. Upon these answers and the others not mentioned the court entered up a judgment in favor of the appellee for the land sued for, from which judgment the appellants have prosecuted this appeal.

The first assignment of error complains of the following portion of the court's general charge: "Where the alleged transfer may have occurred over thirty years ago, the law does not require plaintiff to show such transfer by witnesses who actually saw the same; such transfer may be shown by circumstances, such as the claim, if any, to the land patented under said certificate, asserted by plaintiff and those under whom he claims, under deeds duly registered, the payment of taxes on said land during said years by parties claiming under said transfer, the recitals in any one or more deeds in plaintiff's chain of title that such transfer was made as claimed by plaintiff, the failure of any adverse claimant to set up a claim to said land adverse to that of plaintiff; the partition of said survey between claimants thereto, and sales of portions of said survey by persons claiming under said transfer, by deeds duly registered. Such circumstances are admissible to show to what extent plaintiff and those under whom he claims said land asserted such claim. If such evidence is supplemented by other evidence showing that plaintiff is unable to produce better evidence of said transfer of said certificate, it would be sufficient to raise a presumption that said transfer was made." It is claimed that this is upon the weight of the evidence, and we think it is subject to the objection. Stooksbury v. Swan, 85 Texas, 573, 22 S. W., 963. After telling the jury that the transfer of a land certificate might be shown by circumstantial evidence, the charge then proceeds in detail to enumerate the different facts and circumstances which the jury might consider in determining whether or not there had been a transfer of the certificate from Knapp, and concludes by saying, in effect, that if it be further shown that no better evidence of a transfer is obtainable, this would be sufficient to raise a presumption that a transfer had in fact been made. This language was a direct instruction as to what weight should be given to the facts enumerated, and left to the jury only the

duty of determining whether or not the facts and circumstances referred to had been proved by credible evidence. Guided by this instruction the jury had a right to infer, and probably did, that if this evidence was sufficient to raise a presumption in favor of a transfer, then it was sufficient to justify a finding to that effect upon that special issue. It is never proper for the court to instruct the jury as to presumptions arising from certain facts, except where the presumption is one of law and therefore conclusive, or one of fact required by positive law but rebuttable. Stooksbury v. Swan, supra, and cases cited. It may be that the facts mentioned by the court would be deemed sufficient in the minds of the jury to support an affirmative finding that there had been a transfer of the Knapp certificate, but its sufficiency is to be determined by weighing the different facts proved, considered in the light of all the circumstances surrounding the parties and attending the transactions relied upon, and by drawing therefrom such inferences as the jury might conclude should be properly deduced. The presumptions which arise from these circumstances are presumptions of fact and not of law. The law does not of itself attach any specific probative value to the class of facts under consideration, but permits the juries and courts to consider them and make their own deductions based upon the known relations usually existing between them and certain other ultimate facts sought to be established thereby. Poland v. Porter, 44 Texas Civ. App., 334, 98 S. W., 214. If the court could instruct the jury, as he did in this case, concerning the presumptions that arose from the proof of the given facts, he might with equal propriety have peremptorily instructed a finding in favor of the appellee upon that issue, for the facts upon which the appellee relied were principally shown by written instruments and records, and were not disputed. Appellee insists that the charge complained of is in harmony with the ruling of the court in Harrison v. Fryar, 8 Texas Civ. App., 524, 28 S. W., 250, and almost in the very language of that opinion. While that case may be regarded as intimating, if not positively holding, that recitals in an ancient deed forming a link in one's chain of title, followed by possession and long claim of ownership is, under certain circumstances, sufficient to establish the existence of a transfer from a former owner, it does not hold that such facts when proved become presumptions of law. In that case the court was merely passing upon the sufficiency of the evidence to sustain a finding of fact made by the trial judge, and was not undertaking to say what probative value or weight the recitals relied upon were entitled to as a matter of law. Having reached the conclusion that the assignment should be sustained, this alone would necessitate a reversal of the judgment; but there are other questions presented under other assignments of error which require consideration also.

It is claimed that the testimony is insufficient to sustain the finding by the jury that there had ever been a transfer by Knapp of the original certificate to W. H. McCullough prior to its location. If this contention be true the judgment of the court was without support. While the appellee pleads, among other things, a title through a transfer of the certificate from Knapp to Cook and deed from Cook to John Mc-

Cullough, the jury found as a fact that Cook never acquired ownership of the certificate, and no complaint is here made by the appellee of that finding. It may therefore be accepted as true that unless appellee has shown by sufficient evidence a transfer of the certificate from Knapp to W. H. McCullough, he has failed to present such a chain of title as will authorize his recovery in this suit. It must be borne in mind that neither the appellee nor any one through whom he claims was ever in actual possession or occupancy of the land, but that the appellants, or some of them, were, and had been for a short time before the institution of this suit. By the introduction in evidence of the patent issued by the State to J. H. Knapp in 1855, the appellee himself discloses the existence of an outstanding legal title in the heirs of J. H. Knapp, and thereby reduces his own claim to merely an equitable one. Graham v. Hawkins, 38 Texas, 632. His right to the land sued for must rest solely upon the evidence of the transfer of the certificate prior to its location, from Knapp to W. H. McCullough. According to the testimony of appellee's witness, W. H. McCullough died in 1838, the very year the certificate was issued to Knapp. If there was any transfer made to him it must have occurred prior to his death. We will now proceed to examine in detail the different circumstances upon which the appellee relies for proof of such a transfer. It seems that the file wrapper in the land office, among others, bore the endorsement, "McCullough, Assignee." There is no evidence of when or by whom this endorsement was made, neither is there anything to indicate what McCullough is referred to. There was nothing to show that Knapp and W. H. McCullough were acquainted with each other or had any business relations, or that they lived in the same vicinity. The appellee also relies upon recitals in the deeds which passed between John McCullough and Cook in 1859, four years after the patent had issued. We do not think these do more than to evidence that there was at that time between these two parties conflicting claims of the ownership of the land, each claiming through a conveyance of the original certificate. The deed from John McCullough to Cook, which recites the conveyance of the certificate by Knapp to W. H. McCullough, is not a link in the chain of title through which the appellee claims the land, and is worthless except to show at that time the maker of that deed set up the claim that such a transfer had been made of that certificate. It was a self-serving declaration entitled to no other probative force than merely to show such a claim by John McCullough. Teagarden v. Patten, 107 S. W., 909; McCoy v. Pease, 17 Texas Civ. App., 303, 42 S. W., 659. On the very day that John McCullough made that deed to Cook conveying an undivided two-thirds interest in the Knapp survey, he took from Cook a deed for an undivided one-third interest, in which it is recited that he paid therefor the consideration of $1,500, and which also contains the further recital that Cook was the owner of the certificate by virtue of which the land in controversy was located. It is also a significant fact that this deed from Cook mentions no consideration. The taking of this deed from Cook, for which he was to pay $1,500, is wholly inconsistent with the claim of a previous ownership of the original certificate. If we hold that the appellee is entitled through John McCullough to the

land in controversy, then we have him in the attitude of claiming under a deed reciting facts inconsistent with the claim that W. H. McCullough was ever the owner of the original Knapp certificate, for such a recitation is wholly opposed to the conclusion that Knapp had made a transfer of the certificate to W. H. McCullough. As strengthening Cook's claim that he owned the certificate, it is shown by testimony offered by the plaintiff that Cook had possession of the certificate and caused it to be located on this land in 1845, after the death of W. H. McCullough. It is not shown whether Knapp was living or dead at that time, or at the time the patent was issued. But in any event, in 1845, seven years after the death of McCullough, Cook caused the certificate to be located, which would indicate that he then had actual possession of it. That Cook was at that time claiming ownership of the certificate is evidenced by the fact that he thereafter claimed the land upon which it had been located, and in the subsequent settlement with John McCullough the opposing claimant got the major part of the survey, and, so far as the deeds show, without any consideration being paid therefor. We fully concur in the conclusion expressed in the case last above cited, that in proving the existence of an ancient conveyance by circumstances it is not required that this be done by evidence sufficient to remove all reasonable doubt on the subject. However, this does not relax in any degree the other well-settled requirement, that the plaintiff in such cases must recover, if at all, upon the strength of his own title, and only when he has adduced evidence to that effect sufficient to convince reasonable minds that he has a title, as distinguished from an unsupported claim. For the sake of argument we may admit that the evidence in this case, consisting of the endorsement of the old file wrapper in the land office, the claim of ownership by the McCulloughs, and their payment of taxes for a long period of time, standing alone and unopposed by any countervailing evidence, would be sufficient to sustain a finding by the jury that the original certificate had in fact been conveyed to W. H. McCullough. But that is not the situation presented by the evidence which the plaintiff in the suit himself offered and by which he must be bound. The jury having found that there had been no conveyance of the Knapp certificate to Cook, the facts tending to show such a conveyance not only become unavailable for the benefit of the appellee as furnishing evidence to support the judgment, but are converted into hostile facts tending to contradict those relied upon to show a conveyance of the certificate to W. H. McCullough. If Cook at the time the land was located owned the certificate, then McCullough did not, or if he did he had lost his right. The further fact that John McCullough, after the land was patented, purchased from Cook the only portion of the land his heirs now claim, and took a deed reciting that Cook was the true owner of the Knapp certificate, is certainly entitled to as much probative force as the contrary recital in the deed from John McCullough to Cook made on the same day. The subsequent claim of ownership to a one-third interest in the Knapp survey set up by John McCullough and his heirs, and their payment of taxes, are not inconsistent with a holding under this deed from Cook. The further fact that at that early date John McCullough, who claimed to be the ad-

ministrator of the estate of W. H. McCullough, and his only heir, so far acquiesced in the claim of ownership by Cook as to concede to the latter a two-thirds interest in the survey in dispute, and took a deed for a one-third interest, for which he paid $1,500, is not to be overlooked in weighing the circumstances relied upon as evidence of the transfer to W. H. McCullough. The finding of the jury that the Knapp certificate was never conveyed to Cook precludes us from considering the evidence tending to show such a conveyance in support of the judgment rendered. The specific finding upon which the judgment is based being unsupported by the evidence, the judgment itself was necessarily erroneous. Herndon v. Davenport, 75 Texas, 463, 12 S. W., 1111; Walker v. Caradine, 78 Texas, 493, 15 S. W., 31.

The appellee relies upon the case of Harrison v. Fryar, supra, as authority for holding that the evidence was sufficient. In disposing of that case the court said: "The recital in the contract between White and Rosell of a conveyance by Harrison to White of the certificate was admissible for the purpose of showing that White, Johnson and the vendees of the latter had. for more than thirty years, claimed the land in controversy under such a conveyance thus asserted by them to exist. Supplemented by other circumstances showing inability to produce better evidence of the existence of such a transfer, either oral or written, the ascertainment of a claim of ownership, etc., thereunder, such recital would authorize the court to presume or infer the fact in question—that is, that Harrison had parted with his title to the certificate. Whether or not other circumstances essential to give rise to such a presumption was shown, we are not advised." The recitals referred to were in the deed forming a link in the chain of title of the defendants, who were in possession of the land, and were substantially as follows: That the land in controversy was conveyed from White to Rosell by deed of 1858, which deed recited that it was "executed in accordance with a verbal contract between myself (White) and Rosell, which contract was in substance as follows: That Rosell agreed to locate and cause to be surveyed and patented 640 acres by virtue of a certain land warrant for 1,280 acres and owned by me (White) as the representative of Harrison by virtue of deed of mesne conveyance." The court found that the above recitals in the deed were true, from the fact that the deed was an ancient instrument and had been in the possession of Rosell and other parties in interest since its execution. Justice Williams, of the Court of Civil Appeals, in disposing of the case, said: "It is urged that the facts here stated do not warrant the conclusion, and it may be true that they do not. But it is, we think, only the conclusion which we can look to in reviewing the judgment without a statement of the evidence. The judge is not required to state the evidence, but only his conclusion, and he does not say that the facts were all that were put in evidence affecting the question." Further on in the opinion it is stated that there might have been other testimony upon which the trial judge based his findings. From this it is not at all clear that the court intended to rest the affirmance of the case upon the sufficiency of that recital alone. It has been decided that a claim of ownership long continued and accompanied by possession is sufficient to support the presumption of a conveyance. Hern-

don v. Davenport, Walker v. Caradine, supra. In the case here under consideration neither the appellee nor those under whom he claims ever at any time did anything in the way of a visible appropriation of the land, or acted toward it in such a manner as to notify the true owners, if any were living, that their title was being disputed, further than to assert a claim through the deeds mentioned. The case relied upon does not, we think, support the contention of the appellee.

The appellee filed a cross-assignment of error, in which he complains of the refusal of the court to permit the introduction in evidence of the record of what purports to be an affidavit made by one Jacob de Cordova. The substance of the affidavit is that he (de Cordova) had in his possession, about the year 1852 or 1853, a deed executed by J. H. Knapp to Wm. H. McCullough, conveying to him the land certificate under which the premises in controversy were patented; that said deed was given to affiant by John McCullough for the purpose of procuring the same to be patented, and that said deed was lost. It is claimed that the record showing the affidavit was in Book O, p. 86, of the record of deeds in the office of the clerk of the County Court of Fannin County, and purports to have been recorded December 17, 1864. Nobody testifies as to ever having seen the original of this purported copy, and there is no evidence that an original ever in fact existed beyond that which may be inferred from the entry made upon the deed records in the office of the county clerk. This paper was not such an instrument as is permitted by law to be recorded in the deed records of a county, and the fact that such a record was made gave it no more verity than if a copy coming from any other source. Heintz v. Thayer, 92 Texas, 658, 50 S. W., 930. We do not think the court erred in excluding what purported to be a record of this affidavit. Mackey v. Armstrong, 84 Texas, 173, 19 S. W., 463; Schunior v. Russell, 83 Texas, 95, 18 S. W., 484; Hill v. Taylor, 77 Texas, 299, 14 S. W., 366.

For the errors discussed the judgment of the court is reversed and the cause remanded.

*Reversed and remanded.*