DUNN v. LAND. (No. 5756.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 28, 1917. On Motion for Rehearing, March 21, 1917.)

1. JUDGMENT ⟨key⟩710 — EVIDENCE — PARTIES AGAINST WHOM ADMISSIBLE.

In trespass to try title in which the location of a boundary was the only issue, it was error to allow a witness to testify as to the location of the boundary as shown on a map before the jury as established by the decision of the Supreme Court in another case, since the failure of parties to introduce testimony in a case cannot affect the rights of parties claiming other lands, and in this case the rights of defendant cannot be affected by the fact that meager testimony was introduced in a case between other parties, or even by the fact, had it existed, that a jury in another case on testimony not conclusive had found against his contention.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1230.]

2. APPEAL AND ERROR ⟨key⟩1050(1) — BOUNDARIES ⟨key⟩35(2)—EVIDENCE—ADMISSIBILITY —PREJUDICIAL ERROR.

Evidence that the line contended for by plaintiff and had been recognized as the western boundary line of a grant since decision of the Supreme Court in said case, and that the witness after such decision had made all the surveys for locations of state land certificates between the east line of another grant and the line contended for by plaintiff, was prejudicial, and should have been excluded, since the decision itself was inadmissible, and could affect no rights of the parties in this case, and the construction placed thereon by the witness or others should not be permitted to go before the jury directly or indirectly.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157; Boundaries, Cent. Dig. §§ 154, 155.]

3. EVIDENCE ⟨key⟩116 — ADMISSIBILITY — EXPLANATION OF MAP.

Where a witness had made a map on which alternate surveys were marked "state" which was introduced in evidence by defendant, plaintiff could ask the witness to explain the lines on his map to show that the land in question was blanketed by state surveys.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 134, 135.]

4. EVIDENCE ⟨key⟩333(5) — DOCUMENTARY EVIDENCE—RECORDS.

The records of a certificate in the Spanish language properly translated and shown to be made by the original surveyor of the grant under which defendant claimed, which stated the location of a point designated on a map, was not admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1253.]

5. EVIDENCE ⟨key⟩471(27)—OPINION EVIDENCE —ADMISSIBILITY.

Where a witness was permitted to testify to the facts concerning his occupancy and possession of land, the court properly refused to let him state his conclusion that such possession was exclusive.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2172; Witnesses, Cent. Dig. § 833.]

6. APPEAL AND ERROR ⟨key⟩1050(1)—BOUNDARIES ⟨key⟩35(2) — EVIDENCE — ADMISSIBILITY—PREJUDICE.

Where defendant claimed under a Mexican grant and plaintiff under a grant from the state, evidence that other land had been taken up in that vicinity by settlers under the state since

---

the litigation arose was irrelevant, since the general reputation admissible must be that existing before the controversy arose, and the testimony was prejudicial because it made known to the jury that the validity of many surveys granted by the state is dependent upon the location of the west line of a Mexican grant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157; Boundaries, Cent. Dig. §§ 154, 155.]

7. APPEAL AND ERROR ☞1051(1)—REVIEW—HARMLESS ERROR.

Error in the admission of evidence that other lands in the vicinity had been taken up by settlers under the state, prejudicial because made known to the jury that the validity of many surveys granted by the state is dependent upon the location of the west line of a Mexican grant, was harmless, where a map in evidence would disclose the same information.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161, 4162, 4165, 4166.]

8. EVIDENCE ☞545 — EXPERT TESTIMONY — BOUNDARIES.

Testimony of a witness that during the years he had been an abstractor in a county he had become familiar with the old titles in the county should have been excluded, since the witness' knowledge of land titles has no bearing on his knowledge of the location of the boundary line in question.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2360-2362.]

9. APPEAL AND ERROR ☞1050(1)—REVIEW—HARMLESS ERROR.

The admission of testimony of a witness that during the years he had been an abstractor in the county he had become familiar with the old land titles in the county was not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157.]

10. EVIDENCE ☞333(5)—DOCUMENTARY EVIDENCE—RECORDS.

The action of the trial court in permitting plaintiff to read from a memorandum book of the county surveyor, containing data of application to purchase school lands, memoranda concerning applications by defendant to purchase portions of sections which was the register provided for in articles 3894 and 3895, Rev. St. 1879, entries in which are not by statute made admissible in evidence, was error, since such data was not competent evidence to prove the contents of the application agreement; as the use of records instead of copies should be limited to those of which the contents are admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1253.]

11. APPEAL AND ERROR ☞1050(1)—REVIEW—HARMLESS ERROR.

The action of the trial court in permitting plaintiff to read from a memorandum book of the county surveyor, containing data of applications to purchase school lands, memoranda concerning applications by defendant to purchase portions of sections which was the register provided for in articles 3894 and 3895, Rev. St. 1879, as harmless error, where the applications themselves were admitted.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157.]

12. EVIDENCE ☞219(3) — ADMISSIBILITY — PURCHASE OF ADVERSE TITLE.

The admission of a deed and patent to defendant from the state dated after a former case concerning the land was error, since, while acquiescence of a party to the suit in a dividing line, even though not of a character to estop him from denying its correctness, may be shown

as a circumstance tending to show that such line is the line as established by the surveyor who located the surveys, defendant did no more than protect himself in case the boundary of his grant should be declared contrary to his contention, and the purchase of an adverse title may be made without the hazard of forfeiting title and without prejudice to the purchaser's right.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 767-769.]

13. TRESPASS TO TRY TITLE ☞47(1)—SUIT FOR MORE THAN DEFENDANT CLAIMS—EFFECT.

In trespass to try title, although, when plaintiff sues for more land than defendant claims or is in possession of, the latter should promptly disclaim to that part not in his possession, the fact that plaintiff sues for more than defendant claims will not prevent recovery of the land claimed by defendant to which plaintiff proves title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 69.]

14. BOUNDARIES ☞41 — INSTRUCTION — PRESUMED GRANT.

In an action of trespass to try title, in which both parties claim under grants from the sovereignty proven and title established thereunder, the doctrine of presumed grant invoked by defendant had no applicability; hence a charge that the evidence would not be considered as establishing an adverse claim was not reversible error.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 205-207.]

15. TRESPASS TO TRY TITLE ☞45(1) — MISLEADING INSTRUCTIONS.

As no issue of limitation was pleaded, and boundary was the only issue submitted, although the doctrine of presumed grant had no application, a charge that there was no issue of limitation, and that the evidence should not be considered as establishing any adverse claim or right, was unnecessary, and should not have been given, since it would create the impression that the court was afraid too much weight would be given to the testimony, and it was confusing in telling the jury first that the evidence could not be considered as establishing any right to the land, and then that they might consider it.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 67.]

16. APPEAL AND ERROR ☞231(9)—REVIEW—OBJECTIONS.

Objections that the portions of the charge are calculated, especially on account of not being applicable to the facts in evidence, to mislead and confuse the jury in an effort to reach a verdict, as there is practically no conflict whatever in the evidence as to the lines or any boundaries of the grant, and which are addressed to the question whether a peremptory instruction should have been given, and do not point out in what respect the charge was not applicable to the evidence or how it might confuse the jury, were too general, and as the objections failed to show that it would not be proper to give in the charge the rules with regard to the relative dignity of calls, an assignment of error based thereon will be overruled.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 689.]

17. APPEAL AND ERROR ☞1033(5)—ESTOPPEL TO ALLEGE ERROR.

A party may not object on appeal to portions of the charge which emphasized the importance of the matters relied upon by him.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4056.]

18. TRIAL ⚫⇒228(3) — INSTRUCTIONS — DESIDERATUM.

In a boundary case the court should avoid the use of the word "desideratum," and use instead words generally used and concerning the meaning of which the jury can have no doubt.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 512.]

19. TRIAL ⚫⇒194(2)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

A charge that it was the duty of a surveyor to extend a correct description of courses and distances into the field notes, and the map accompanying such field notes, and until the reverse was proven it would be presumed the surveyor did his duty in those respects, was not erroneous as on the weight of the evidence, although the distances marked on this map are shown to be erroneous, where the charge also states that it was the surveyor's duty to actually run around the land intended to be embraced in the survey and see that such natural or other objects were designated on it as would clearly point out and identify the locality and boundaries of the given tract and to extend a correct description of these objects, natural and artificial, in the field notes and map.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 441.]

20. TRIAL ⚫⇒296(9)—INSTRUCTIONS—CURE OF ERROR.

A charge that a call for a survey to be circumscribed on three sides by waters called for must control proof of a survey inconsistent with such theory, although on the weight of the evidence when standing alone was not error, where in another portion of the charge this charge is applied to the facts in a way not objected to, and so that the call for the survey to be surrounded on three sides by water is not permitted to control.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 712.]

21. TRIAL ⚫⇒252(5) — INSTRUCTIONS — APPLICABILITY TO EVIDENCE.

A charge on the rule that in arriving at the bounds of a survey courses and distances yield to natural or artificial objects of demarkation, but courses and distances will not be made subordinate to an unmarked line or corner in an older survey when such line or corner can only be found and identified by running course and distance from some other marked line or corner or well-known object, held not applicable to the facts, which showed the marks of a first survey to have existed at the time the record survey was made.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 600.]

22. BOUNDARIES ⚫⇒3(6)—SURVEYS.

If the marks called for by a first survey existed at the time a second survey was made, but did not exist when the controversy arose, but the location of the old line can be identified, the same rule would be applied as if the marks still existed at the time of the controversy.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 24–29.]

23. TRESPASS TO TRY TITLE ⚫⇒47(1)—JUDGMENT—STATUTE.

Under direct provisions Rev. St. 1911, arts. 7741 and 7758, whenever the defendant in trespass to try title pleads not guilty, he puts in controversy plaintiff's title to all land sued for, and a judgment that plaintiff take nothing by his suit has the same effect as a judgment that defendant recover the land.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 69.]

24. TRESPASS TO TRY TITLE ⚫⇒47(1)—JUDGMENT—STATUTE.

Under direct provision of Rev. St. 1911, art. 7755, in trespass to try title in which issue was whether the land claimed was within a Mexican grant, a judgment for plaintiff describing the land was proper, and it was not necessary to fix the boundary of such grant; as the case would not settle other persons' rights even by fixing the boundary.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 69.]

25. BOUNDARIES ⚫⇒40(1) — QUESTION FOR JURY.

The location of the boundary in question held for the jury.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 196–203.]

On Motion for Rehearing.

26. BOUNDARIES ⚫⇒35(2) — LOCATION OF LINES—REPUTATION.

Common repute relied upon in support of a line in a survey, having its inception 47 years after the original survey, and originating from the survey of one who did not pretend to know the location of the original lines, was inadmissible.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 154, 155.]

27. TRIAL ⚫⇒296(2)—INSTRUCTIONS—CURE OF ERROR.

An instruction on the rule regarding unascertained lines in former survey and their control over courses and distances erroneous, because not applicable to evidence, held not cured by a charge that, if the grant under which defendant claims was bounded by a named grant, to find for defendant, or a charge that to find for defendant the line of such other grant and its corners must be identified.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 708.]

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Trespass to try title by Charles Land against John Dunn. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

J. C. Scott, of Corpus Christi, for appellant. G. R. Scott and Boone & Pope, of Corpus Christi, for appellee.

MOURSUND, J. Charles Land sued John Dunn in trespass to try title, seeking to recover 184.29 acres of land in Nueces county, described by metes and bounds, and alleged to be a portion of survey 404, made by virtue of Beaty, Seale, and Forwood certificate No. 1740. Dunn answered by plea of not guilty. The controversy resolved itself into one of boundary, Dunn contending that the land was situated within the boundaries of a Mexican grant made by the state of Tamaulipas to Enrique Villareal, while Land claimed that it was situated west of the west line of said Mexican grant, and therefore the sale thereof to him by the state of Texas vested in him the title thereto. The trial resulted in a verdict and judgment for plaintiff for the land sued for and for damages in the sum of $23.16.

[1] By the first assignment of error com-

plaint is made of the ruling of the court in permitting the plaintiff to ask the witness Blucher, in effect, what was the line, as shown in the map then before the jury, designated as the western boundary of the Rincon del Oso grant according to the decision of the Supreme Court of Texas in the case of Schaeffer v. Berry. The case referred to is reported in 62 Tex. 705. The opinion speaks for itself, and need not be discussed. The failure of parties to introduce testimony in a case cannot affect the rights of parties claiming other lands, and in this case the rights of Dunn cannot be affected by the fact that meager testimony was introduced in a case between other parties, or even by the fact, had it existed, that a jury in another case no testimony not conclusive, had found against his contention. We cannot imagine any more prejudicial testimony in a boundary suit than that of a witness to the effect that the highest court of the state had established the line at a place contended for by one of the parties: The qualification of the bill of exceptions fails to show any ground for admitting the testimony. The map in evidence, it is true, had the Dix line marked on it, which was the line contended for by Land, but we are unable to see how this could justify getting before the jury the witness' construction of the Schaeffer v. Berry Case or any one else's construction thereof.

[2] The second and fourth assignments show that the witness was permitted to testify that the line contended for by Land had been recognized as the western boundary line of the Rincon del Oso grant since the decision of the Supreme Court in said case, and that the witness after such decision had made all the surveys for locations of state land certificates between the east line of the Grogaria Farias grant and the line contended for by Land. This testimony should have been excluded. The decision itself was inadmissible, and could affect no rights of the parties in this case, and the construction placed thereon by the witness or others should not be permitted to go before the jury directly or indirectly. The logical inference from this testimony would be that the Supreme Court had held the land in controversy not to be embraced in the Villareal grant. The decision itself might do less harm than such testimony, and this case should be tried on the evidence introduced therein entitled to probative force, and not upon the failure of parties in another suit to adduce testimony. We cannot permit any intimation to the jury that the Supreme Court has established the line, and that defendant is controverting the correctness of such decision. That the testimony was highly prejudicial cannot be doubted. Colonial Mortg. Co. v. Tubbs, 45 S. W. 623. Assignments 1, 2, 4, 5, 6, and 9 are sustained.

[3] By the third assignment complaint is made because the court permitted plaintiff to prove by its witness C. F. H. Blucher that south of the Oso Creek, between the lines of the Farias grant and the Dix line, the territory was blanketed with state surveys. This witness had made a map on which all of such state surveys were delineated, which was introduced in evidence by defendant, and afterwards the question was asked. Under the circumstances plaintiff could ask the witness to explain the lines on his map. The map showed the alternate surveys to be marked "state," and we fail to see how the jury could have failed to understand that locations under the state had been made upon all of such territory. The assignment is overruled.

[4] Defendant offered in evidence the record of a certificate in the Spanish language made by Antonio Canales, the original surveyor of the Villareal grant, with proper translation thereof, recorded in the deed records of Nueces county in 1849. The certificate is dated March 24, 1849, and is to the effect that the point designated with the letter B on the map of the Rincon del Oso which he made on August 2, 1831, and which in the titles is given the name of the Refugio, is the first pass which is found on ascending the Nueces river higher than the heights of White Bluff, well known to all the old settlers, and that when he made the survey of the land Enrique Villareal was one of the chain bearers. The governor of Tamaulipas certified to Canales' signature to the certificate, and a witness thereto swore before the county clerk of Nueces county that he saw Canales sign it. The record of the certificate was not admissible in evidence. Barrow v. Gridley, 25 Tex. Civ. App. 13, 59 S. W. 602, 913; Mackey v. Armstrong, 84 Tex. 159, 19 S. W. 463; White v. McCullough, 56 Tex. Civ. App. 383, 120 S. W. 1093; Magee v. Paul, 159 S. W. 325.

[5] The eighth assignment is overruled. The witness was permitted to testify to the facts concerning his occupancy and possession, and the court only refused to let him state his conclusion that such possession was exclusive.

[6, 7] By the tenth assignment complaint is made because the court permitted plaintiff to ask defendant's witness Noakes the following question:

"Now, I will ask you, Mr. Noakes, if it isn't a fact that since that time [the litigation as to the location of the western line of the Villareal grant] that land out there has, a great deal of it, been taken up by settlers under the state, lots of people out there who weren't out there before have taken up land out there?"

The objection was that the testimony sought to be elicited was immaterial and irrelevant, and an effort to prove by parol what was shown by the records of the general land office and the records of Nueces county. The argument under the assignment relates almost entirely to the reference to litigation contained in the question, but the proposition submitted thereunder relates solely to the

issue whether testimony that the land had been taken up by settlers under the state was irrelevant. The testimony, in our opinion, is irrelevant. The fact that persons have bought under the state other lands than that in controversy can add no force to appellee's contention as to the boundary line. It cannot be relevant as establishing general reputation for the general reputation admissible must be that existing before the controversy arose. It is bound to be prejudicial for it to be made known to the jury that the validity of many surveys granted by the state is dependent upon the location of the west line of the Rincon del Oso grant (Matthews v. Thatcher, 33 Tex. Civ. App. 139, 76 S. W. 61), and yet, in view of the maps used in evidence, we fail to see how much such fact could be kept from the jury, and for that matter, owing to the large territory involved, it is doubtless a matter of common knowledge in Nueces county. In view of the disclosure by maps of such locations, we hold that the error is harmless, and overrule the assignment.

[8, 9] The eleventh assignment complains of the admission of the testimony of A. M. French to the effect that during the years he had been an abstractor in Nueces county he had become familiar with the old land titles in the county. The witness' knowledge of land titles has no bearing on his knowledge of the location of the boundary line in question, and should have been excluded. This error is trivial, and would not require the reversal of the judgment.

We see no objection to the testimony objected to by the twelfth assignment. The assignment is overruled.

[10, 11] Assignments 13 to 15, inclusive, complain of permitting plaintiff to read from a memorandum book of the county surveyor, containing data of applications to purchase school lands, memoranda concerning applications by defendant to purchase portions of sections 404 and 406. We presume the book was the register provided for in articles 3894 and 3895, R. S. 1879. We have found no statute, and are cited to none, which made said register or certified copies of its entries admissible in evidence. Objection to the evidence was made on the ground that such data was not competent evidence to prove the contents of the application, and such objection should have been sustained, as the agreement for the use of records, instead of copies, should be limited to those of which the contents are admissible. However, as the applications themselves were admitted, the evidence complained of was harmless.

[12] By assignments 16 and 17 complaint is made of the introduction in evidence of a patent and deed to defendant. The patent was for survey 314, Gulf, Colorado & Santa Fé Railway Company, containing 277½ acres, and the land is a part of that covered

by Kinney section IV–7, the subdivision claimed by defendant under the Villareal grant. The deed was to 136.28 acres out of the strip sued for by plaintiff, and the land was described as a part of section 404, the state grant under which plaintiff claims. Appellant fails to state why he considered the testimony immaterial and irrelevant; while appellee is of the opinion that it tends to show that the Dix line was commonly and generally known after the Schaeffer-Berry suit as the west line of the Villareal grant. As we have before stated, the survey made by Dix created the controversy, and common reputation as to said line thereafter established would not tend to establish the footsteps of the original surveyor. We must therefore reject appellee's theory. It is held, however, that acquiescence of a party to the suit in a dividing line, even though not of a character to estop him from denying its correctness, may be shown as a circumstance tending to show that such line is the line as established by the surveyor who located the surveys. However, in this case the acts relied on to show acquiescence occurred after the controversy created by the Dix survey arose, and could not tend to raise a presumption that the Dix line was the line established by Canales. In fact, what defendant did was no more than to protect himself in case the Dix line should be determined to be correct. If plaintiff had bought the adverse claim under the Villareal grant to part of the land claimed by him, it could as well be held that the acceptance of the conveyance would tend to show that the east line of the Farias survey was the west line of the Villareal. We believe the evidence should be excluded, and sustain the assignments.

[13] The eighteenth assignment complains of the refusal to give the following special charge:

"In this case you are instructed that the plaintiff cannot recover in this action otherwise than according to the description he has given of the land sued for in his petition. And inasmuch as the defendant, Dunn, is in possession of and asserts title to only a part of the land described in the petition and sued for by plaintiff, the plaintiff is not entitled to recover, and you will accordingly return a verdict in behalf of the defendant, John Dunn."

The ruling was correct. When plaintiff sues for more land than defendant claims or is in possession of, the latter should promptly disclaim as to that part not in his possession; otherwise, even if he wins as to the part claimed by him, he will be charged with costs. Ballard v. Carmichael, 83 Tex. 366, 18 S. W. 738; Zarate v. Villareal, 155 S. W. 340. When defendant disclaims as to part, judgment will be rendered upon the disclaimer. Pouns v. Zachery, 46 Tex. Civ. App. 604, 103 S. W. 234. When he pleads not guilty, plaintiff will recover all to which he proves title, as well as his costs. Bender v. Brooks, 61 Tex. Civ. App. 464, 130 S. W. 653. If plaintiff is correct as to the boundary dispute, all

the land sued for by him is part of section 404 and owned by him, and he is entitled to recover it. Defendant, instead of disclaiming as to the part not covered by the Kinney section, pleaded not guilty, thus putting plaintiff on proof as to the whole tract sued for as fully as if defendant was in possession. Article 7741, R. S. 1911. The cases relied upon have no applicability to the question involved in this case. The assignment is overruled.

[14, 15] The twelfth assignment complains of the giving of a special charge limiting the consideration by the jury of the evidence as to possession of the strip of land in controversy and adverse claims thereto to the issue of boundary and acquiescence. The jury was told that, as there was no issue of limitation, the evidence should not be considered by them in any way as establishing any adverse claim or right to the land, but only in passing upon the question as to the location of the boundary line in dispute and the question of acquiescence, if any, in said boundary line. The objection was that the charge would deprive defendant of one of his most valuable defenses, namely, that his long possession raises the presumption, on which the jury must act in the absence of evidence to the contrary, that the land was long ago severed from the public domain and has become and is the property of defendant. We fail to see how the doctrine in regard to presumption of a grant has any applicability to the facts of this case, in which it is admitted that both parties claim under grants from the sovereignty and connect themselves therewith, and the only issue is one of boundary. When a grant is proven and title thereunder established, the doctrine of presumed grant can have no applicability. The assignment must be overruled. However, we believe the charge should not have been given. No issue of limitation was pleaded, and it was unnecessary to limit the testimony, for fear the jury would consider limitation. The charge of the court submitted only one issue, that of boundary, and a charge such as was given may tend to create the impression that the court was afraid they would give too much weight to the testimony mentioned. Besides, the charge might confuse the jury, in that it unequivocally tells them the evidence should not be considered in any way as establishing any right to the land, and then states that they may consider it. All unnecessary charges should be avoided.

[16] The twenty-first assignment is based upon objections to certain paragraphs of the charge. The objections in substance are that the portions of the charge are calculated, especially on account of not being applicable to the facts in evidence, to mislead and confuse the jury in an effort to reach a verdict; as there is practically no conflict whatever in the evidence as to the lines or any boundaries of the grant. These objections were so general that we fail to see how the court could have been aided by them. It is not pointed out in what respect the charge was not applicable to the facts in evidence, or how it might confuse the jury, and the last part of the objection addresses itself to the question whether a peremptory instruction should have been given. The objections failed to show that this was a case in which it would not be proper to give in the charge the rules with regard to the relative dignity of calls, and for that reason the assignment is overruled. We will say, however, that we see no reason why this charge should not be given.

[17] A similar complaint is made in the twenty-second assignment concerning paragraph IV 6 of the charge. What we have said in discussing the previous assignment applies to this one, besides it occurs to us that defendant should not object to this paragraph; for, as we understand the evidence, it emphasized the importance of the matters relied upon by him. The assignment is overruled.

[18] Paragraphs 7 and 8 of the IV subdivision are also complained of. We do not think these paragraphs are erroneous, nor are the ideas expressed in such language that it can be said the jury was probably confused thereby, and therefore we overrule assignments 23 and 24. At the same time we suggest that the first sentence of paragraph 7 be eliminated. For that matter, the idea conveyed by the entire paragraph appears to be sufficiently expressed in the concluding portion of paragraph 5 of the same subdivision. We also suggest that paragraph 8 could be improved by avoiding the use of the word "desideratum," and using instead of the words generally used and concerning the meaning of which the jury can have no doubt.

[19] The ninth, tenth, and twelfth paragraphs, subdivision IV, are also attacked. The ninth paragraph is objected to as being upon the weight of the evidence, because therein the jury are told that it was the duty of Canales to extend a correct description of courses and distances into the field notes, and the map accompanying such field notes, and until the reverse was proven it would be presumed the surveyor did his duty in those respects, and in this connection it is contended the evidence clearly shows that the distances marked on Canales' map are erroneous. When thus presented it appears that there is much merit in the contention, but, as the charge also states that it was Canales' duty to actually run around the land intended to be embraced in the survey and see that such natural or other objects were designated on it as would clearly point out and identify the locality and boundaries of the given tract and to extend a correct description of these objects, natural and artificial, in the field notes and map, it is seen that the calls for course and distance are not particularly singled out so as to make the charge one on the weight of the evidence. The matters called for relied upon by each party are thus required to be presumed to be correct, until

proven incorrect. We overrule the assignment.

[20] The first sentence in paragraph 10 announces a familiar rule of law applicable to boundary disputes, and is not subject to objection. The second sentence, under the peculiar facts of this case, might be upon the weight of the testimony because the jury might infer therefrom, when standing alone, that the call for the survey to be circumscribed on three sides by the waters called for must control proof of a survey inconsistent with such theory. However, in paragraph 11 the first part of paragraph 10 is applied to the facts in a way not objected to by appellant, and in such a way as to give prominence to his theory, as well as in a way so that the call for the survey to be surrounded on three sides by water is not permitted to control. Under the circumstances it must be held there is no merit in the twenty-sixth assignment of error.

[21, 22] The twelfth paragraph reads as follows:

"You are further instructed that the calls for course and distance will control a call for an unmarked line when the facts and circumstances offered in evidence tend to show that the surveyor calling for said unmarked line, was unacquainted with its true locality, and called for it by mistake, and such call for course and distance will harmonize the remaining calls of the grant, and furnish a correct guide for ascertaining the true boundaries of the grant as originally surveyed and called for in the grant. The rule that a call for a marked line of an elder survey will prevail over a call for course and distance has no application to an unmarked line whose terminal points cannot be identified by natural or artificial objects. Nor will a call for a line or corner of an older survey prevail over a call for course and distance when such line or corner of such older survey can only be found and identified by running course and distance from some other marked line or corner or well known object. Though of the calls employed in grants for land courses and distances are the lowest in dignity and importance, yet, if, from all the evidence in the case, the land granted can be more certainly identified by running the courses and distances called for by the surveyor who made the original survey, then the grant should be so determined by the jury in arriving at their verdict."

This charge is not applicable to the facts of this case. The description of the Farias survey made by Canales, the surveyor thereof, calls for the boundary monument of "San Antonio" to be some distance south of the northeast corner of the survey, and for the boundary monument called "Nuestra Senora del Refugio" to be at the southeast corner of said survey. He identified the corner sometimes called "Senor San Antonio," sometimes called "San Antonio," by taking for the monument a cluster of "anacuas and hackberries," and said that a cross was painted on it. The testimony of Blucher tends to show that this cluster of trees was to be found long after Canales made his survey. Canales did not run south from this point, because the "expert" informed him there was a large thicket through which the cord would have to run and where no water could be had. He therefore went back to the Puenticitas creek, along which he had surveyed for the west line of the grant to Herrera and sons and Farias, and from there ran out the south line, marking the southeast corner of the Farias survey. He stated that he reached a prairie where a long pole was set for a boundary land mark, forming a cross on top of it, and he gave it the name of "Nuestra Senora del Refugio," and ordered the party to set a stone monument "as it was a locality where a wooden one might perish." Said survey was made in 1805. In 1831 Canales located the Rincon del Oso grant, under which defendant claims. The principle announced in the charge was applied in the case of Gerald v. Freeman, 68 Tex. 201, 4 S. W. 256, and other cases, in which the facts called for it, but it has since become well established that it cannot be laid down as an absolute rule, and limitations thereof have been found necessary. See Maddox Bros. v. Fenner, 79 Tex. 279, 15 S. W. 237; Ware v. McQuinn, 7 Tex. Civ. App. 107, 26 S. W. 126; Hermann v. Thomas, 168 S. W. 1048, and cases cited therein. In fact, it is merely a rule of evidence which in some cases is viewed as the best guide in determining what was actually included in the survey. Of course, if at the time the second survey is made there are no marks to be found by which the line marked for the older survey can be identified, the rule might be as applicable as if the line of the older survey had never been marked. If the marks existed at the time the second survey is made, but do not exist when the controversy arose, but the location of the old line can be identified, the same rule would be applied as if the marks still existed at the time of the controversy. Goodson v. Fitzgerald, 40 Tex. Civ. App. 619, 90 S. W. 898. The charge was inapplicable to the facts of this case, and upon the weight of the evidence in several particulars. Clawson v. Wilkins, 93 S. W. 1086; Holland v. Thompson, 12 Tex. Civ. App. 471, 35 S. W. 19. The assignment is sustained.

[23] There is no merit in the twenty-eighth assignment. Whenever the defendant pleads not guilty, he puts in controversy plaintiff's title to all land sued for, and a judgment that plaintiff take nothing by his suit has the same effect in trespass to try title as a judgment that defendant recover the land. The verdict and judgment are not subject to objection on the grounds urged. Articles 7741, 7758, R. S. 1911.

[24] The twenty-ninth assignment is also overruled. There was no necessity for the verdict fixing the boundary for the Villareal grant. This case could not settle other persons' rights even if the jury had fixed the boundary, and the only issue between plaintiff and defendant was whether the land sued for is within the Villareal grant. If none of it is within the grant, a verdict and judgment for plaintiff for the land sued for is proper; if

part of it be found to be within the older grant, it would, of course, be necessary to describe the portion awarded plaintiff so that it could be identified. Article 7755, R. S. 1911. We are not confronted with a case in which the description of the line or land by the jury is uncertain, and the authorities relied on are not applicable.

[25] The thirtieth assignment questions the sufficiency of the evidence to sustain the judgment. We have read the testimony carefully, and conclude that the location of the west line of the Rincon del Oso grant is a question for the jury.

Defendant contends that Canales' survey appropriated all land lying east of the Farias survey, but, as we understand the evidence, there is nothing in the Farias grant to indicate that its northeast corner was called the "Refugio," which is the name given by Canales to the northwest corner of the Rincon del Oso survey. The southeast corner of the Farias grant is named in the Farias grant "Nuestra Senora del Refugio," while Canales called his southwest corner "the one on the prairie." Canales made no mention of the boundary point called "San Antonio." The specific calls therefore cannot be said to make the east line of the Farias survey the west line of the Rincon del Oso. It is attempted to show by other portions of the description that said lines are identical. Canales said his survey was bounded on the west by the Barranca Blanco pasture land, and that the boundary of the "Refugio" was also the division from the Barranco Blanco lands. The grants to the Herreras and Farias do not state that the lands therein mentioned are known as the Barranca Blanco lands, but the survey thereof calls for Barranco Blanco, meaning "white bluffs," and white bluffs are found on the Nueces on one of the Herrera tracts, but not on the Farias tract. It therefore became a question of fact as to what was meant by Barranco Blanco pasture lands. Ordinarily it would be said that a surveyor would, of course, call for lands granted, and that Canales must have meant the land on the west which had been granted by the sovereignty, and therefore went to the Farias survey. But it appears that he also surveyed the large survey known as Corpus Christi lands south of the Cayo del Oso, and called for the Barranco Blanco pasture lands to adjoin it on the west, when in fact said Herrera and Farias grants lie much further west than the west line of the Corpus Christi land. It also appears that Canales in describing the Rincon del Oso survey said it was bounded on the south by the Cayo del Oso "forming division from Corpus Christi lands," and on the other sides (except the west) by the lagoons and the Nueces river, and also said that the land had an irregular shape because the Laguna Madre and the Cayo del Oso contract it upon all sides except the west. The

evidence shows conclusively that the survey either does not go to the Farias east line, or else it is not contracted on all sides by the Cayo del Oso and the other waters named. Defendant's theory is that the Cayo del Oso is only a part of the southern boundary, and that the remainder is constituted by a line run east from the southeast corner of the Farias survey until it strikes the Cayo del Oso, and that this line is called for by the words, "the one on the prairie and the one on the cayo" from west to east, on the southern side, while plaintiff contends that the "one on the prairie" does not mean the corner known as Nuestra Senora del Refugio, but is a corner on the edge of the prairie upon the Oso, because it is so placed upon Canales' map accompanying his description of the survey, and that the "one on the cayo" means a call at the mouth of the cayo. The map is very inaccurate in many particulars, and, if the descriptive calls conflict, for, if Canales ran his west line along the east line of the Farias grant, portions of his description will have to give way, while, if he ran it where plaintiff contends it should be established, the calls for Barranco Blanco pasture lands is a mistake, if thereby he meant to call for the east line of the Farias survey. It appears from the two surveys in evidence made by Canales that accuracy in the general expressions descriptive of the location of his surveys was not deemed necessary, and this would be true enough if his calls for boundary points were sufficiently specific. The problem is further complicated by the fact that there is a conflict as to what is meant by cayo, upon which meaning is dependent the location of the place where Oso Creek ends and the cayo begins. This point is material on the issue whether a grant of the size described by Canales can be made by adopting a west line running north from any part of the Cayo del Oso. The above will disclose same of the difficulties in locating the west line of the Rincon del Oso. We believe the question to be decided is one for the jury, and therefore overrule the thirtieth assignment, as well as the nineteenth assignment, which complains of the refusal of a peremptory instruction.

What we have said is not intended as a discussion of the relative weight and importance of the calls or of the circumstances relied upon, many of which have not been stated. Our purpose was to point out the conflicting calls and other elements of uncertainty, so as to show the basis for overruling appellant's earnest contention that we should render judgment for him upon the evidence. The facts of this case cannot well be compared to the facts of any other case; still the reasons relied upon for holding the issue to be one for the jury find support in expressions in other boundary suits. See Booth v. Upshur, 26 Tex. 64; Titterington v.

Kirby, 47 Tex. Civ. App. 595, 106 S. W. 899; Jacoby v. Norton, 40 Tex. Civ. App. 313, 90 S. W. 524.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

[26] In appellee's motion we find it stated that he is unable to understand why we should hold that it was not error for the court to permit Blucher to testify about the state surveys on his map, and yet refuse to permit him to explain the Dix line, which also appeared on his map. This is begging the question. Of course, if a map is introduced in evidence containing a lot of surveys and lines, the other side is entitled to ask what each line represents, and there could be no objection to asking him about the line marked D–V and have him answer that such line represented the west line of the grant as located by Dix. But we fail to find anything on the map about the case of Berry v. Schaeffer, and no reason can be urged why it should be held to have been harmless to ask questions which were bound to impress the jury with the idea that the Supreme Court had decided in favor of the correctness of the Dix line. The decision itself was not admissible, and common repute as to its effect could not be introduced on the theory that it was really common repute as to the correctness of the Dix survey. Appellee calls attention to the fact that this suit was filed a good many years after the Dix line was run, and that therefore we erred in applying the rule that the common repute must have been established before the controversy arose. When the Dix survey was made it created the controversy with regard to the true location of the west line of the Rincon del Oso survey, and the fact that this particular suit was not filed to determine the controversy as to the land involved until many years afterwards does not change the fact that the controversy existed. There was no common reputation in existence when Dix made his survey whereby the line fixed by him was recognized as the west line of the Rincon del Oso survey. Dix located his line at the place where the length of the west line would come nearest to corresponding with the distance called for on Canales' map, and there is no pretense that he found any marked lines or that any one before him recognized the line so run by him. After the controversy arose which was created by his survey, people bought from the state, and doubtless many who claimed under the Villareal grant bought from the state in order to have peace; but how could the reputation thus created tend to show that the Dix line traced the footsteps of Canales? The common repute relied on by appellee in favor of the Dix line had its inception 47 years after the Rincon del Oso survey was made, and originated from the survey of a man who did not pretend to have any knowledge of the location of the original lines. Such repute would not tend in any way to show the location of the lines run by Canales, and is inadmissible. State v. Dayton Lumber Co., 159 S. W. 396.

Appellee contends that we erred in sustaining the sixteenth and seventeenth assignments of error.

Acquiescence is admissible on the theory that every one is presumed to know the boundaries of his own land, but in this case there is no contention that Dunn ever acquiesced in the line contended for by plaintiff as the dividing line between their lands. It is only contended that by taking a quitclaim reconveyance five years after the suit was filed in which the parcel is described with reference to corners of a state survey as well as with reference to the Kinney section lines, and purchasing from the state another state survey, he has recognized the right of the state to sell land west of the Dix line, and thus indirectly acquiesced in the correctness of the Dix line. Judge Wheeler said in the case of Turner v. Smith, 11 Tex. 632, that the purchase of an adverse title can be made without incurring the hazard of forfeiting title and without prejudice to the purchaser's right. Buying from the state would not preclude Dunn from contending that the Villareal title was the superior one, nor amount of an admission that it was not the superior one, and we therefore fail to see how it could be a circumstance tending to show acquiescence in the correctness of the Dix line. The acceptance of a reconveyance pending the suit in which the land is described by reference to corners of a state survey and also with reference to the Kinney sections made under the Villareal grant, and which shows on its face that Dunn's fence is situated on the West line of the Kinney section, cannot be said to show any acquiescence in the correctness of the Dix line.

[27] By inadvertence, in discussing the twenty-seventh assignment, we described the Farias survey as having been made by Canales instead of Medrano. This has been corrected in the original opinion. We are unable to see any force in the argument made with regard to said assignment of error. Appellee apparently contends that Canales, in making the Rincon del Oso survey, did not call for an unmarked line of an adjacent survey, but merely called for an unmarked line for the west line of his survey, and that therefore the charge was peculiarly applicable. If the facts indisputably bore out the statement so made, there could not be the slightest doubt that the charge was entirely inapplicable to the facts, because the charge is based upon the theory that Canales did call for an unmarked line of another survey, or at least that the jury might find that he intended to do so. The charge speaks of his calling for an unmarked line by mistake. Surely if he called only for an unmarked line

of his own survey he did not do so by mistake. The second portion of the charge continually refers to marked line of an older survey, thus making it plain that the rule given to the jury was to the effect that, if they found that Canales called for the east line of the Farias survey, but the marked corners made by Medrano could not be found then, regardless of how certainly the location of the east line of the Farias could be established, they should locate the Rincon del Oso survey by course and distance. There is no merit in the contention that other portions of the general charge or special charge No. 3 rendered harmless the error in the twelfth paragraph of the charge. It may be doubted whether there is even a conflict between paragraphs 11 and 12; for in order to find for appellant under paragraph 11 the jury was required to find not only that the location of the east line of the Farias could be definitely ascertained, but that its corners must be established and marked and capable of identification. Special charge No. 3 instructs the jury that if the Rincon del Oso grant is bounded on the west by the Farias grant then to return a verdict for defendant. The jury would naturally follow the instructions of the court with regard to the rules to be observed in determining whether the Farias bounded the Rincon del Oso on the west, and would not understand from said special charge that they were at liberty to disregard rules laid down for determining the question.

The motion is overruled.